## WORLEY v. TOBACCO COMPANY.

1. Letters-patent No. 181,512, granted Aug. 22, 1876, to Christian Worley and Henry McCabe, for an improvement in manufacturing plug-tobacco are void, inasmuch as the improvement therein described was, with the consent of the inventor, in public use for more than two years prior to his application therefor.

2. *Egbert* v. *Lippmann* (*supra*, p. 333) cited and approved.

3. An inventor cannot relieve himself of the consequences of such use by assigning to those who used his invention an interest therein, or in the letters-patent granted therefor.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Robert H. Parkinson* for the appellants.

No counsel appeared for the appellees.

MR. JUSTICE WOODS delivered the opinion of the court.

The bill of complaint avers that letters-patent No. 181,512, bearing date Aug. 22, 1876, were issued to Christian Worley and Henry McCabe, the complainants, for an improvement in manufacturing plug-tobacco, of which Worley was the inventor, and McCabe his assignee of an undivided half, and that the defendants were infringing them. It prays for an injunction to restrain further infringement, and for damages and an account of profits. The answer asserts the invalidity of the letters, and denied infringement. Upon final hearing the Circuit Court dismissed the bill, and the complainants appealed.

The specifications on which these letters-patent were issued declare as follows : —

"The common way to proceed in finishing plug-tobacco is to press the bunches into plugs having the form seen in the retail stores. The plugs are next removed from the moulds in which they are pressed, and packed in boxes, and the boxes placed in a room where the tobacco is sweated and cured. The plugs are afterward taken from the boxes, and subjected to a second pressing before they are packed in the boxes for sale.

"My improved mode consists in finishing tobacco by placing the plugs in a box in alternate layers with thin metal plates, applying

extreme pressure thereto, and subjecting the plugs to dry heat for
several hours, while they are tightly compressed between the plates
which are in contact with the broad sides of the plugs; and, finally
removing the box, and leaving the contents therein until cold, the
whole process being adapted to give a fine and smooth finish to the
wrapper, and by putting the plug in proper condition, doing away
with its tendency to bulge out at the sides, as plugs are apt to
do when they have not been thus treated."

  ·  The claim was thus set forth : —.  ·

  " I am aware that there is not any novelty in, first, the simple
finishing of tobacco by placing it in a heated room, and, secondly,
the simple pressing of tobacco between metallic plates, and, there-
fore, I do not claim this distinct heating and pressing of tobacco
broadly; but what I do claim as new and of my invention, and
desire to secure by letters-patent, is — .

  " The mode of finishing tobacco substantially as described, con-
sisting of placing the plugs in a box in alternate layers with thin
metal plates, applying extreme pressure thereto, and subjecting the
plugs to dry heat of about 140° Fahrenheit for several hours while
they are tightly compressed between the plates, which are in
contact with the broad sides of the plugs, and finally removing the
box and leaving the contents therein until cold."

  It will be seen that the patent disclaims the simple pressing
of tobacco between plates, and the finishing of it by simply
placing it in a heated room.

  What appellants insist is new is this, namely, that while
the plugs of tobacco are still confined in the finisher (which is
the name given to the box in which they are placed before
being subjected to extreme pressure), and while still tightly
compressed between the metallic plates, they are placed in a
sweat-room and allowed to remain several hours, and before
being removed from the finisher are taken from the sweat-
room and allowed to cool.

  This process, it is contended, brings the oil of the tobacco to
the surface of the plug, and gives it a glossy coating which im-
proves its appearance, and keeps the tobacco from moulding or
swelling.

  The letters-patent are, therefore, for the process described,
and nothing more.  None of the appliances by which it is

carried on are claimed as new, and the evidence abundantly shows that they are all old devices.

The appellees insist that the letters are void, because the improvement described therein was in public use at the factory where Worley was employed for more than two years prior to his application therefor.

The law applicable to the case is sect. 24 of the act of July 8, 1870, c. 230, now embodied in the Revised Statutes as sect. 4886, which declares: " Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvement thereof not known or used by others in this country, and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof, and not in public use or on sale for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor."

Neither the bill of complaint nor the evidence shows the date of Worley's application, nor the assignment of an undivided half of his invention to McCabe. The date of the letters must consequently be taken as the date of the application and assignment. The question is, therefore, whether the improvement patented to Worley was in public use for more than two years prior to that date; that is to say, whether a public use prior to Aug. 22, 1874, is proven.

We think that the testimony of the appellants themselves shows that this question must be answered in the affirmative.

From their depositions the following state of facts appears : —

McCabe was the proprietor of a tobacco manufactory in the city of St. Louis, and Worley was in his employment as a workman in the factory. In the summer of 1869 McCabe moved his factory from Second Street to Cass Avenue, and lost about two months of good working weather in so doing. The work of the factory was consequently carried on pretty late in the fall, and McCabe told Worley that they should have to go to work early in the spring. It was to prevent the sweating of tobacco which was manufactured in the spring of the year that Worley, in the fall of 1869, conceived the process for which he

afterwards obtained his patent. It was at the suggestion of McCabe that he turned his attention to the subject, and the process was contrived for McCabe's benefit. It is not pretended that Worley and McCabe were joint inventors. The invention was made by Worley alone. He at once began using his invention in McCabe's factory. He testifies that it was complete, and he became satisfied with its results, in 1871. It is true that after that date he made experiments to decide upon the best mode of constructing his finishers so as to secure the requisite strength; but the finisher constituted no part of his patented invention. In 1871 his invention was complete, and in his opinion successful, and was adhered to from that date, without change.

The process was used in the factory of McCabe under the direction of Worley until the application was filed for the patent in 1876, and according to the testimony of McCabe, Worley continued the process for McCabe's benefit, who paid him a salary larger than was usual for his knowledge as a tobacco manufacturer. During all the time from 1870 to 1876 thousands of pounds of tobacco finished by means of this process in the factory of McCabe were sold in the market every year. No injunction of secrecy was laid on McCabe by Worley, no one was excluded from the factory where his process was carried on, and at least one manufacturer learned the process from observing it in McCabe's factory, and adopted it and used it in his own. Worley, it is true, testifies that he told several of the hands employed in the factory not to say anything about what they were doing, and McCabe says that before the patent was obtained there was "an outside understanding" that they were "to keep it away from the public eye as much as possible." The testimony of the appellants on this point is most vague and unsatisfactory, and it is evident that no means were taken by them to keep the process invented by Worley a secret, and it was not kept a secret. Worley, according to his own testimony, communicated his process not only to McCabe but to others, and used it openly in McCabe's factory for a period of six years before applying for his patent.

It has been repeatedly held by this court that a single instance of the public use of his invention by a patentee, for more

than two years before the date of his application, will be fatal to the validity of the letters, when issued. *Egbert* v. *Lippmann, supra,* p. 333, and the authorities there cited.

We think the testimony of the appellants themselves shows such a public use of the process covered by Worley's patent as to render it invalid. This evidence brings the case clearly within the terms of the decision of *McClurg* v. *Kingsland* (1 How. 202), where it was declared that if a person employed in the manufactory of another, while receiving wages, makes experiments at the expense and in the manufactory of the employer, has his wages increased in consequence of the useful result of the experiments, makes the article invented, and permits his employer to use it, no compensation for its use being paid or demanded, and then obtains a patent for it, the patent is invalid and void.

Suppose Worley had not assigned an interest in his invention to McCabe, and, after obtaining his letters, had brought suit against the latter for infringement, it is perfectly clear that McCabe could have defended the suit successfully on the ground of his own public use of the invention for two years before the date of the patent. If such defence could be made by McCabe, it could be made by any one else, for the facts relied on would render the patent void.

The fact that McCabe, just before the patent was applied for, became the assignee of an interest in it, does not make this defence any the less effectual; for the assignee of a patent-right takes it subject to the legal consequences of the previous acts of the patentee. *McClurg* v. *Kingsland, supra.*

The inventor cannot relieve himself of the consequences of the prior public use of his patented invention, by assigning an interest in his invention or patent to the person by whom the invention was thus used.

We think the evidence of the appellants themselves establishes clearly the defence under consideration.

*Decree affirmed.*