FREYDBERG BROS., Inc., v. HAMBURGER.

(District Court, D. Maryland. January 25, 1927.)

No. 586.

1. Patents ⬧74—Whether patentee had knowledge of prior use is immaterial as to anticipation.

Where prior use is fully established, its effect as anticipation of a later patent is the same, whether or not the patentee knew of it.

2. Patents ⬧51(1)—Prior use need not extend beyond single factory to be public.

That a device was used only in a single factory, but that a large one, with many employees, who knew of the use, does not impair the publicity of the use.

3. Patents ⬧53—Successful use of device for several years in large factory was not experimental.

Successful use of a device in a large factory for a number of years cannot be considered experimental.

4. Patents ⬧72(1)—Nonpatentable improvements will not avoid effect of a prior use.

Improvements in a machine or product, which do not add anything patentable to it, will not avoid the invalidating effect of a prior use.

5. Patents ⬧26(2)—Carrying forward original thought, though producing better results, is not invention.

Mere carrying forward of the original thought, though it produces better results, is not invention, which will sustain a patent.

6. Patents ⬧26(2)—Result is not invention itself.

A result, though it may constitute potent evidence of invention, is not invention.

7. Patents ⬧328—Freydberg, 1,457,625, for fabric binding strips, held invalid for anticipation.

The Freydberg patent, No. 1,457,625, for fabric binding strips with fast edges to prevent raveling, held invalid for prior public use by another.

In Equity. Suit by Freydberg Bros., Incorporated, against Mark Hamburger. Decree for defendant.

J. Granville Meyers, Thomas J. Johnston, and Charles S. Jones, all of New York City, and Morris A. Rome, of Baltimore, Md., for plaintiff.

Edward R. Walton, Jr., of Washington, D. C., and Jacob S. New, of Baltimore, Md., for defendant.

SOPER, District Judge. The plaintiff corporation is the assignee and owner of the patent to Aaron Freydberg, No. 1,457,625, issued June 5, 1923, on an application filed February 12, 1923. The bill alleges infringement of the patent by the defendant, and prays an injunction and an accounting for profits. The answer sets up the invalidity of the patent, and relies upon disclosures of the prior art and prior public use. The patent relates to fabric binding strips, such as are used for making bindings or "piping" on garments, and more particularly to a bias-cut fast-edged binding strip or roll of such binding material. According to the specification, straight-cut binding strips, in which the threads of the fabric run parallel and at right angles to the longitudinal edges of the strip, are often used and are relatively free from a tendency to ravel at the edges. Bias-cut strips, in which the threads run diagonally in relation to the longitudinal edges, however, are more readily shaped and conformed to the curved portions or corners of garments to which the binding is applied. But bias-cut strips ravel much more freely than the straight cut, and consequently, when applied, have to be made wider in order to provide sufficient margins of the raveled edges outside the stitching.

To obviate this difficulty, the inventor provided a bias-cut strip with fast edges, consisting of adhesive material applied to the faces of a roll of the strip, so that the adhesive remains on the edges of the strip when it is run off the roll for use. Raveling is thereby prevented, and the strip may be made as narrow as may be desired for any purpose without allowance for raveled edges. Substantial saving of binder material is effected, and neater bindings can be made. Furthermore, the firm edges permit the bindings to run more freely through the mechanism of sewing machines. In practice, the method of manufacture comprises cutting a wide piece of fabric diagonally to form pieces of suitable length, sewing together the selvage edges of these pieces, rolling the strip on a suitable core, such as a cardboard tube, and severing, or cutting off the complete roll at regular intervals, so as to produce relatively narrow individual rolls of binding strip of the desired width. Then an adhesive, such as glue, is applied to both faces of the individual rolls.

The first claim of the patent, which is sufficiently illustrative, is as follows:

"1. As a new article of manufacture, binding material, comprising a length of relatively narrow bias-cut fabric, said length consisting of a plurality of relatively narrow bias-cut pieces joined together on diagonal lines, the opposite longitudinal edges of the fabric being treated with adhesive to retard fraying tendency of the threads along such edges."

When the application for the patent was pending in the Patent Office, it was at first rejected by the Examiner on the patent to Farmer of February 12, 1844, and the patent to Hoffman of April 15, 1919. Farmer's patent covers an article of bias tape formed in continuous strips of bias-cut fabric, put up in packages ready for use, and adapted for bindings, pipings, etc. It is substantially the same as the Freydberg product, without the application of adhesive to the sides of the rolls. The patent to Hoffman relates generally to a process for applying gum or any suitable adhesive to the rough edges of cut ribbons, after they have been placed in rolls, in order to prevent the fraying of the edges. In other words, the patent involves the same idea as the Freydberg patent in the application of adhesive, but, unlike the Freydberg product, straight-cut rather than bias-cut material is apparently used. The Examiner said it was not invention, either of process or of product, to treat Farmer's roll with Hoffman's adhesive.

Thereupon the applicant advanced the argument of utility, and showed that, even in the few months during which the goods had been upon the market, large orders had been received, and the new material was being extensively adopted in the garment trade. It was estimated that, by the application of adhesive to the sides of the rolls, a saving of approximately 27 per cent. of the material used in the tailoring of garments could be made, since no allowance had to be made for raveling. It was pointed out that, although the Farmer patent was 39 years old, it had not occurred to any one in a very crowded art to make the improvement and the saving involved in the patent in suit. Upon this argument the patent was granted.

The evidence in the case indicates that the need for a fast-edged binding material was particularly emphasized in the year 1915 and thereafter during the World War, by reason of the dearth of materials for linings. The practice then became common to substitute partially lined for full-lined coats, which made necessary the use of piping or binding to conceal the seams. Owing to the scarcity of silks and satins, alpaca was used for bindings, and was found to be particularly objectionable, since it frayed very easily, whereby considerable inconvenience and loss were incurred. Nevertheless it was of necessity extensively employed until the year 1918. Thereafter the partially lined garment was continued, as the public had become accustomed to it. Other materials for binding became available, but these also, to a less extent than alpaca, were liable to fray and to impede the action of the sewing machines. No solution of the difficulties, however, was forthcoming for several years.

Freydberg fixes the period of his invention between February 15 and March 31, 1921. He testifies as to one sale of fast-edged bias binding on March 31, 1921. This lot was made at the request of a manufacturer of women's garments, who wanted a piping sufficiently narrow to go through the gauge of a machine equipped with a very narrow folder. In the experiments which Freydberg made in order to accommodate his customer, he hit upon the use of adhesive, and found that it was practicable; but he did not adopt the process in the manufacture of binding for men's clothing until the end of 1922. Nor did he apply for a patent until February 12, 1923. However, as soon as the article was introduced by the patentee in 1922, the response was immediate, and it was very generally adopted in the manufacture of men's clothing.

Practical experience supports the claims of substantial saving of material and greater facility in the operation of the machines. While there is some conflict in the testimony as to the advantages to be gained from the use of fast-edged material, the preponderance of testimony supports the claims of the patentee in these respects.

The defendant, on his part, relies not only on the patents to Farmer and Hoffman, but also on the British patent to Bracher of 1896 and United States patent to Bulley of 1919, which were not before the Examiner. Bracher's invention relates to ribbon bands and other fabrics which are formed to any desired size, shape, or width by severing one portion of woven fabric from another, and is designed to provide a selvage that will not fray or ravel. The invention is primarily intended to be applied to ribbon bands for passing around hats, and for binding the brims thereof which are desired to be wider at one portion of their width than another, having one sinuous edge and the other straight. The invention consists essentially in forming, on a band ribbon or other fabric, a selvage edge, by applying to the cut edge a narrow line of adhesive, which stiffens and causes the threads to adhere, and prevents raveling. The defendant claims that the sinuous edge in the Bracher invention is in effect a bias edge, made fast by the application of adhesive, which is the substance of the patent in suit.

The Bulley patent relates to improvements in the method of producing bias-fab-

ric tape or strip. The purpose of the patent is to avoid the necessity of attaching short lengths of strip together to make a long strip. Short strips are ordinarily produced in the making of bias fabric from woven sheets of cloth fabric, by cutting the sheets in diagonal lengths; the length of the strips being necessarily determined by the width of the sheet. It is impracticable to weave sheets of any great width. The inventor produces a continuous unjointed one-piece strip of any desired width and length, employing a woven fabric tubular formation. This fabric is then cut on a continuous line intersecting the threads at an angle of 45 degrees. The edges of the strip are bound by gumming or impregnating them with some suitable adhesive material. The fabric was specially designed to be used in the manufacture of automobile tires. It is undoubtedly an instance of the application of adhesive to the rough edges of bias-cut fabric, but is not designed for use in the piping or binding of garments.

More particularly the defendant relies upon the evidence, adduced for the first time in this case, of the use of bias-cut fabric, whose edges were made fast by the application of adhesive, in the clothing factory of H. A. Seinsheimer & Co., at Cincinnati, from the month of August, 1915, until the present time. Irving I. Frankel, the production manager of the firm, was produced as a witness in court. The factory experienced great difficulty with the raveling of alpaca binding in 1915. Frankel had heard that adhesive had been used on straight-edged work in the ribbon industry, and consequently experimented with adhesive on bias-edged alpaca bindings, and found that it was practicable. All the rolls of binding on hand in the factory were then treated, and thereafter all that were used in the manufacture of garments in the factory were treated in the same way. This practice continued until the fall of 1923, when Frankel was approached by a salesman of Freydberg Bros., and thereafter it was found to be generally more convenient to purchase the goods already made; but in the use of special lots the factory has continued until the present time to make its own fast-edged binding.

The testimony of Frankel is corroborated in every essential detail by a considerable number of persons in the Seinsheimer factory. A public exhibition of some of the garments was made in a convention of clothing designers in New York City in January, 1916, but made little or no impression upon those who saw it. In November, 1922, at Cincinnati, Frankel had a long conversation with one Jacob Marcus, a salesman of Freydberg, in regard to a binding machine which Marcus had invented. He was having trouble with the operation of it, whereupon Frankel told him that the trouble was not with the binder, but with the binding, and that the trouble could be overcome by painting the edges of the binding with glue and thereby stopping the fraying of the material. Marcus returned to Cincinnati in April or May, 1923, with samples of fast-edged bindings made by Freydberg Bros. which he offered for sale. As soon as he exhibited a roll of the piping, Frankel accused him of purloining the idea and getting it patented. It is a significant circumstance that Marcus was present throughout the trial of the case at bar in open court, heard the testimony of Frankel, but was not called as a witness to contradict it.

[1] The use of fast-edged binding in the Seinsheimer factory, as outlined, is proved to the satisfaction of the court beyond a reasonable doubt. It does not necessarily follow that the Freydberg patent is based on information given by Frankel to Marcus. Freydberg claims to have hit upon the same expedient independently as early as the spring of 1921; but, the use in the Seinsheimer factory for six years prior thereto having been clearly established, it is immaterial, so far as the validity of the invention is concerned, whether Freydberg had learned of the practice or not. Mast Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856; Virginia-Carolina Peanut P. Co. v. Benthall Mach. Co. (C. C. A.) 241 F. 89.

Plaintiff's counsel forcibly contend that the proof of prior use in the case of the Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154, was as strong as in the case at bar, and yet in the former case the patent was sustained. As usually happens there are striking differences of fact in the two cases. It is never of much use to cite the findings of fact made by one court on the evidence before it as authority for a desired result in another tribunal on different evidence. Indeed plaintiff's counsel do not deny the substance of the Frankel testimony, for they say in their brief: "There can be no doubt that experimental work was done along the lines indicated which would have been a successful use if the people had known how to make it so."

[2] What Frankel did, however, meets the tests laid down by the courts. The period of his operations is fixed beyond reasonable

dispute. The publicity of the use is also established. Fast-edged rolls were used in a large factory by many employees. The fact that the rolls were used only in the place where Frankel was employed does not impair the publicity of the use. Worley v. Tobacco Co., 104 U. S. 340, 26 L. Ed. 821. The fast edges of the binding were of necessity concealed from view in the many thousand garments which were sold to the public; but it is settled that the use may be public, although concealed by the nature of the invention itself. Schrader's Sons v. Wein Sales Corp. (C. C. A.) 9 F.(2d) 306.

[3] Nor can it fairly be said that Frankel's work was experimental. What he wanted was something to prevent the fraying of the edges of the binding. He found it, and used it with success in the practical operations of a large factory throughout a period of years. Ficklen v. Harding (C. C. A.) 273 F. 179; Mayer v. Mutschler (C. C. A.) 248 F. 911; National Mach. Corp. v. Benthall Mach. Co. (C. C. A.) 241 F. 72.

The plaintiff relies chiefly upon the fact, stated by Frankel, that it did not occur to him that fast edging made available a narrower binding than was possible without it. Since he did not discover the considerable saving disclosed by the patent in suit, it is urged that his work by comparison must be regarded as experimental only, or at least as not identical with the discovery which Freydberg made. The only reference to the width of the strip in the claims is the expression that the binding material comprises a length of "relatively narrow bias-cut fabric, said length consisting of a plurality of relatively narrow cut-bias pieces." When the claims were originally filed, the narrowness of the strip was not referred to therein. The gist of the patent was the application of adhesive to the rolled faces of bias-cut binding fabric. The specification, however, did set forth a saving of material as an advantage or result of the invention, and the Examiner, after argument, accepted this substantial benefit as evidence of invention, and, reversing his former action, recommended the issuance of the patent. Thereafter the reference to relatively narrow strips was inserted in the claims.

The phraseology is vague, but as pointed out in Faultless Rubber Co. v. Star Rubber Co. (C. C. A.) 202 F. 927, not too vague, if taking into account the specification and approved aids of interpretation, it is possible to determine what the claims are intended to cover. The difficulty here lies not so much in interpretation as in the lack of invention in the improvement or change indicated by the language employed, whereby it is sought to differentiate the Freydberg from the Frankel product. That Freydberg effected a beneficial change in garment making cannot be denied, but clearly his extension or improvement of the Frankel idea was a change rather of degree than of kind.

[4] Improvements in a machine or product, which are not of the substance of the patent, and do not add anything patentable to it, will not avoid the invalidating effect of a prior use. See Lettelier v. Mann (C. C.) 91 F. 917; Smith & Griggs Manufacturing Company v. Sprague, 123 U. S. 249, 8 S. Ct. 122, 31 L. Ed. 141, and the cases above cited.

The same result is reached, whether Frankel's operation be considered as a public prior use, or merely as a manifestation of the prior art. The Bracher and Bulley patents, not considered by the Examiner, somewhat weaken the force of his conclusions. But the case may be disposed of on the Frankel disclosures. He found out how to prevent raveling of the edges. Having this in view, Freydberg's contribution is limited to the discovery that, since raveling is eliminated, it is no longer necessary to make allowance for it in determining the width of the binding strip, an instance of the exercise of ordinary mechanical skill but not of invention.

[5-7] It is settled law that the mere carrying forward of the original thought, a change only in form, proportion, or degree, or the doing of substantially the same thing in the same way, by substantially the same means, even if attended by better results, is not such invention as will sustain the patent. Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 S. Ct. 601, 36 L. Ed. 327; Penn. R. Co. v. Locomotive Truck Co., 110 U. S. 494, 4 S. Ct. 220, 28 L. Ed. 222; Hickory Wheel Co. v. Frazier (C. C. A.) 100 F. 99; Am. Road Mach. Co. v. Pennock, 164 U. S. 26, 17 S. Ct. 1, 41 L. Ed. 337; French v. Carter, 137 U. S. 239, 11 S. Ct. 90, 34 L. Ed. 664; McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800; Lovell Mfg. Co. v. Cary, 147 U. S. 634, 13 S. Ct. 472, 37 L. Ed. 307. Indeed, Freydberg's narrower strip is merely a result of the discovery which must be attributed to Frankel, and a result, although it may constitute potent evidence of invention, is not invention itself. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277.

The bill of complaint will be dismissed.