### PARAFFINE COMPANIES, Inc., v. Mc-EVERLAST, Inc., et al.
### No. 7720.

Circuit Court of Appeals, Ninth Circuit.
June 8, 1936.

Miller & Boyken, Charles S. Evans, and Hugh N. Orr, all of San Francisco, Cal., for appellant.

Lyon & Lyon, Frederick S. Lyon, and Irwin L. Fuller, all of Los Angeles, Cal., for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree dismissing a bill charging infringement of certain claims of two patents. The issues raised by the answer were invalidity by reason of prior public use and noninfringement. The trial court found that of the claims in suit all but four were invalid, and that of the four valid claims none was infringed.

The first patent in suit, Rosener & Doane, No. 1,500,769, describes a machine for wrapping pipe which is to be laid underground. The covering of underground metal pipes with a protective sheaf is necessary to prevent corrosion. A most satisfactory material appears to be felt paper impregnated with an asphalt compound. Formerly the wrapping was done by hand, a process unsatisfactory because such wrapping had to be done in the factory rather than in the field; because it was slow and cumbersome; and because the hand process cannot achieve that smoothness of spiral wrapping essential to uniform protection throughout the length of the pipe.

In 1913 a so-called lathe type of pipe-wrapping machine was perfected (French patent No. 1,151,096). The pipe to be wrapped was held at each end in a stationary frame, in such a manner that the pipe could revolve on its axis at any desired speed. A short distance from the revolving pipe was a traveling carriage bearing a roll of wrapping material. The carriage traveled in either direction parallel to the pipe's axis of revolution, feeding the wrapping material to the pipe as the latter revolved. The roll of material could be adjusted on the carriage to feed the strip to the pipe at the desired angle to the latter's axis to achieve the proper degree of spiral in the wrapping.

The lathe type of machine was unsatisfactory, in that each length of pipe had to be wrapped and taken out of the machine before another could be put in; and, a more serious defect, in that the smaller diameter pipes would sag from their own weight between the ends at which they were supported. Thus the wrapping would not be uniform throughout the pipe's length.

The Rosener & Doane machine (1,500,-769), patented July 8, 1924, obviated the dif-

ficulties of both hand wrapping and the lathe type machine. It provided a means whereby pipe could be continuously wrapped, a second length being inserted in the machine before the first was finished. It also provided a means whereby the spiral wrapping could be made even throughout the length of the pipe.

The central feature of this patent is that the pipe, when placed in the machine, does not merely revolve. It also moves axially or longitudinally. It is fed forward into the machine the while it turns on its axis. Passing out the other side of the apparatus, it is wrapped from a roll of material adjusted at the angle to the pipe to give the desired degree of spiral to the wrapping. The pitch of the spiral is regulated by relative variations of the axial and rotary speeds of the pipe.

This adjustability between the two movements is accomplished by three feed rollers which engage the pipe and propel it forward through the machine at the same time they are causing it to revolve. The feed rollers are driven simultaneously through gearing to the central source of power. The feed rollers are adjustable about axes perpendicular to their axes of revolution. This means that the rollers can be turned into a position where their edges will strike the pipe transversely, imparting to it a purely rotary motion; likewise, by turning the rollers to an angle 90 degrees from the position just described, the roller edge will engage the pipe longitudinally, giving it a purely forward movement with no rotation. The rollers can be set at any angle between the two extremes. The angle will determine the relative rotary and longitudinal motions of the pipe and so determine the pitch of the spiral wrapping.

The shafts bearing the rollers are fixed on coiled springs in such fashion that each shaft will bear down on the pipe, holding it in position for its journey through the machine; but, by means of the resilient spring, will move radially away from the pipe to accommodate couplings or other unevenness in the pipe's surface. An outstanding feature of the Rosener & Doane machine is the means provided for simultaneous adjustment of the three feed rollers to give the proper relative motions to the pipe. Each roller shaft carries a small gear which is meshed with a single gear carried on a large circular wheel. This wheel is adjusted to be turned manually by means of a hand screw. Passing through the machine, the pipe is engaged by the strip of wrapping material which in the meantime has been led from a roll down into and through a tank of hot asphalt material and thence led up to and onto the pipe by means of guide rollers.

The claims of the Rosener and Doane patent alleged to be infringed are 1, 4, 5, 13, 14, 15, 18, 19, and 20. Claim 1 reads: "In a machine for wrapping cylindrical objects, a feed roller, means for adjusting said feed roller about an axis perpendicular to its axis of rotation, and means independent of said objects for rotating said feed roller."

Claim 4 adds to the above a means for adjusting the position of the feed roller radially to the pipe, to hold the pipe in position. Claim 5 adds means for resiliently holding the pipe in such position (the coiled spring). Claims 13, 14, 15, and 20, so far as here material, describe means for simultaneously adjusting the three feed rollers about axes perpendicular to their axes of rotation. Claims 18 and 19 describe the means for feeding a strip of wrapping material through a body of fluid and onto the pipe.

The second patent in suit, Rosener No. 1, 1,686,929, patented October 9, 1928, describes an apparatus for simultaneously rotating and longitudinally moving a pipe through the machine with means to vary relative to each other the rotary and forward movements to attain the desired spiral. So far as moving the pipe is concerned, the second patent discloses nothing differing in principle from the first. The novelty is in the means by which the wrapping is fed to the pipe. In the Rosener and Doane machine the guide rollers which carry the strip of material from the roll through the tank of asphalt compound and onto the pipe are fixed to the tank, and separate from the frame of the machine proper. To vary the angle at which the strip is fed to the pipe, it is necessary to shift the entire tank. In the second patent, to borrow the words of appellant's brief, the utility is "somewhat improved by providing a strip guiding means structurally integral with the wrapping machine itself and movable to vary the angle at which the strip of wrapping material could be fed to the pipe. This made a more compact and dependable commercial machine." Claims 19, 20, and 21, the only claims of the second patent now in issue, describe this

means for adjusting the roll and strip of wrapping material relative to the axis of the pipe.

In the McEverlast machine, the alleged infringing device, the pipe moves longitudinally through the apparatus the while it is being rotated; over a tank of asphalt compound through which passes the wrapping material before it engages the pipe. The pipe is rotated and propelled, not by feed rollers, but by two driving disks, one above and one below the pipe. The pipe engages an edge of each disk, and is thus rotated and propelled forward at the same time. Adjustment between the rotary and longitudinal movements is not made by varying the positions of the disks which are stationary except that they can move radially away from the pipe and hold it in position by means of resilient springs. Adjustment of rotary and longitudinal movement is made by moving a frame holding the pipe as it is driven forward and rotated by the disks. By thus moving the pipe up or down, its position relative to the edges of the disks is altered. Relative rotary and longitudinal movement is determined by the direction of the tangents of the disks at the point where the pipe touches them.

One defense interposed at the trial was prior public use of the claims in suit under both patents under Rev.St. § 4920 (35 U.S.C.A. § 69). This provides that it is a defense to a suit for infringement if the patented article "had been in public use or on sale in this country for more than two years before his [the inventor's] application for a patent, or had been abandoned to the public."

The claimed anticipation was alleged to be effected by a so-called "cross-roll" machine used to wrap pipe commercially from 1912 until 1926 at the plant of the National Tube Company, a subsidiary of United States Steel, in Versailles, Pa. That such a machine was constructed and used is amply shown by depositions of one Buckingham, master mechanic at Versailles for 30 years, who constructed it; J. W. Ross, also an employee of National Tube, who tended the machine until 1913; Lynch, superintendent of the galvanizing plant, who was familiar with the operations of the cross-roll device; Max Rosencranz, at the time of testifying, superintendent at the National Tube plant, and, at the time he observed the alleged anticipatory device, a mechanical engineer on the staff of a concern af-filiated with National Tube; and R. H. Brendle, machinist at the Versailles plant.

The cross-roll machine went out of operation about 1926. That year, and the following, photographs of it were made which have been introduced in evidence. The witnesses just mentioned testified that the pictures were accurate reproductions of the cross-roll machine. From these photographic reproductions, and from the testimony of the witnesses personally acquainted with the machine during its years of operation, the essential features of the National Tube apparatus clearly appear.

We find the prior use machine a device by which the pipe to be wrapped is fed forwardly through the machine and revolved simultaneously, both motions being imparted by two feed rollers, adjustable about axes perpendicular to their axes of rotation. Each feed roller is mounted in a housing at the end of a cylindrical shaft and both are driven by a single electric motor. As the pipe progresses through the machine, it rests on the lower feed roller. The upper roller, by force of its own weight, rests on the pipe. The upper roller is adjusted to move vertically away from the pipe to accommodate couplings and unevenness by means of a compressed air cylinder.

The longitudinal movement of the pipe through the machine is varied in relation to the rotary movement by revolving the housing containing each feed roller about an axis perpendicular to the axis of rotation of the feed roller. This adjustment is not made simultaneously for the two rollers. Each is turned, together with its housing, individually. Originally, the housings were turned by a set screw arrangement, but later it was found more practical to make the adjustment manually.

The rollers propelled the pipe over a tank of heated material through which the wrapping material was led by guide devices, and brought to the pipe. The roll of wrapping material is carried on a frame universally adjustable to vary the angle at which the strip engages the pipe.

It appeared by the depositions of the defendant that the National Tube machine was used in the Versailles plant contemporaneously with a pipe-wrapping machine of the lathe type. This latter was used to treat the larger diameter pipes, while the cross-roll contrivance was operated to cover pipes from one-half inches to four or

six inches in diameter. Pipe was wrapped commercially in large quantities, master mechanic Buckingham testifying that the amount commercially treated by the cross-roll machine was a "vast quantity," and another witness that it was "millions of feet." During the active years of the cross-roll machine, its existence and operation was not kept secret. H. B. Lynch, superintendent of the National Tube galvanizing plant since 1908, testified: "Outsiders were taken to the machine and were shown the machine in operation at various periods between the time the machine was first installed until it was dismantled."

The trial court ruled that for all claims of the two patents, except 13, 14, 15, and 20 of Rosener and Doane, 1,500,769, claimed to be infringed, the National Tube Company cross-roll machine was an anticipation by prior public use and that hence the patents were invalid as to those claims. The Rosener and Doane patent is valid, the court held, as to the claims listed 13, 14, 15, and 20, inasmuch as they describe a means for simultaneous adjustment of the feed rollers about axes perpendicular to their axes of rotation. This feature was absent in the cross-roll device at Versailles. There each feed roller had to be adjusted separately. As to these claims, however, the court held there was no infringement by the defendant McEverlast's machine.

We are in accord with the holding of the District Court. The central issue in the case is whether or not the National Tube machine at Versailles was an anticipation of the patents in suit. Not only must the alleged anticipating device embrace the features of novelty claimed in the patent, but its use must be shown to be public within the meaning of the statute, and not merely experimental. The evidence presented by the defendant on this issue was all in the form of depositions. Hence there is no presumption in favor of the trial court's findings thereon. Rown v. Brake Testing Equipment Corp. (C.C.A.9) 38 F.(2d) 220, 223. The plaintiff introduced no evidence to contradict the defendant's depositions.

The burden of proof on the issue of prior public use rests heavily upon the party seeking to show such use. Of such a defense the Supreme Court has said: "Courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, sat-

isfactory, and beyond a reasonable doubt." Washburn, etc., Co. v. Beat 'Em All Barbed Wire Co., 143 U.S. 275, 284, 12 S.Ct. 443, 447, 36 L.Ed. 154.

To the same effect are Deering v. Winona Harvester Works, 155 U.S. 286, 300, 301, 15 S.Ct. 118, 39 L.Ed. 153; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 60, 43 S.Ct. 322, 67 L. Ed. 523; Rown v. Brake Testing Equip. Corp. (C.C.A.9) 38 F.(2d) 220, 223. The rule has been recently restated, perhaps modified, in Radio Corp. v. Radio Engineering Laboratories, 293 U.S. 1, 7, 55 S.Ct. 928, 931, 79 L.Ed. 163, where the Supreme Court, speaking through Mr. Justice Cardozo, said: "Sometimes it is said that in a suit for infringement, when the defense is a prior invention, 'the burden of proof to make good this defense' is 'upon the party setting it up,' and 'every reasonable doubt should be resolved against him.' [Citing cases.] Again it is said that 'the presumption of the validity of the patent is such that the defense of invention by another must be established by the clearest proof—perhaps beyond reasonable doubt.' [Citation.] The context suggests that in these and like phrases the courts were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and suggestion to guide the course of judgment. Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance."

We think the defendant's evidence in this case discharges "a heavy burden of persuasion," that it "has more than a dubious preponderance," and, in so far as evidence consisting entirely of depositions can do so, that it proves anticipation "beyond a reasonable doubt." Considering first the nature of the National Tube machine apart from the question of the extent of its use: Plaintiff admits that there was such a machine in existence. There is no doubt that the principle of the machine process was to simultaneously rotate and longitudinally move the pipe forward by means of feed rollers adjustable about axes perpendicular to their axes of rotation. There is no doubt that the feed rollers allowed couplings and unevenness to pass through by an air cylinder causing the upper roller to move away from the surface of the pipe and close down

resiliently upon it. There is no doubt that the wrapping material was carried on a roll supported on a device universally adjustable to vary the angle at which the strip was fed to the pipe. The identified photographs show these features. They are testified to by the master mechanic who constructed the machine, by one man who tended it daily for more than a year, by the superintendent of the galvanized plant who had occasion to observe it in operation from 1912 to 1926, by a mechanical engineer of an affiliated concern who was consulted with reference to the construction of such a machine and who personally inspected it after its construction.

The features described are a definite anticipation of the claims of Rosener & Doane No. 1,500,769, with the exception of the feature of the latter which permitted simultaneous adjustment of the three feed rollers. Plaintiff argues that this patent is also a novelty over the National Tube machine, in that the rollers in the latter were adjusted by hand, while in the Rosener & Doane machine mechanical means are provided for turning them. But the National Tube rollers were provided with mechanical means, in the form of set screws by which they could be adjusted. The arrangement was discarded because manual adjustment was found to be easier. Furthermore, there is nothing novel in any of the means shown in this suit by which a single revolving wheel is pivoted about an axis perpendicular to its axis of rotation. That particular operation is not important. It is the application of that combination of movements to spiral a pipe through a machine which is the essential novelty claimed in the patent in suit.

Likewise in the case of claims 19, 20, and 21 of Rosener, No. 1,686,929, the novelty of which is asserted to be set out in that portion of the claim which reads, "In a machine for wrapping cylindrical objects, a support * * * means on said support for guiding a strip of wrapping material to the object and movable to vary the angle between the strip and object * * *" is anticipated by the universally adjustable reel-holder of the National Tube machine.

We turn now to a consideration of the question of public use. If the purpose of the prior use is chiefly experimental, such use will not defeat the subsequent patent, even though the use is long continued and viewed by the public. But, if the device is used in the regular course of production or commerce, and is not concealed from the public, it will invalidate the subsequent patent. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141; Root v. Third Ave. R. Co., 146 U.S. 210, 13 S.Ct. 100, 36 L.Ed. 946. On the question of secrecy and concealment, much depends, naturally, on the nature of the article and whether it is of a sort to be sold generally to the public or is used in production of other goods to be sold.

Of an article of the latter type, in which is included the National Tube cross-roll machine, the Supreme Court has said: "It was a public use in the sense of the statute, and within the decisions of this court, inasmuch as it was used by the complainant in the regular conduct of his business, by workmen employed by him in its operation, and in the view of such part of the public as chose to resort to his establishment, either for the purpose of selling material for the manufacturer, or of purchasing its product." Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 254, 8 S.Ct. 122, 124, 31 L. Ed. 141.

It was held in Worley v. Loker Tobacco Co., 104 U.S. 340, 343, 26 L.Ed. 821, that a single instance of public use is sufficient to defeat a subsequent patent.

We hold with the District Court that the defendant has shown prior public use within the meaning of the statute. Witnesses well qualified to speak, intimately acquainted with the mechanical devices of their company, testified that the cross-roll machine was used to wrap pipe commercially from 1912 to 1926. The length of the time of its use alone speaks against the notion that such use was experimental. "A vast quantity of pipe" and "millions of feet" were wrapped, say the witnesses. Plaintiff claims the indefinite nature of these estimates removes the probative value of the testimony; but there is no way a mechanic may accurately estimate the quantity of pipe wrapped in his machine for a 14-year period ending many years before his deposition was taken. The actual figures of quantity wrapped are unimportant if, as here, the amount constituted a substantial manufacture. We believe such testimony goes to show that the machine was used in regular commercial operation. Orders for wrapped pipe and entries relative thereto were introduced in evidence. They did not specify that the wrapping was done on the cross-roll machine, rather than on the company's lathe type device. Hence

such data in themselves are not evidence of the commercial use of the cross-roll. But the absence of sales data affirmatively showing that pipe was wrapped on the cross-roll machine does not, as plaintiff seems to contend, show an improbability that pipe was so wrapped. There is no reason to think that commercial orders for wrapped pipe would specify upon which of the vendor's machines the process would be done.

The plaintiff lays stress upon the fact that a lathe type machine was used in the Versailles plant contemporaneously with the life of the cross-roll. It is said that the witnesses who testified to the quantity of pipe wrapped on the cross-roll and to the number of years of that machine's commercial operation probably confused the two devices. But we note that the deponents were careful to distinguish between the two. The lapse of many years could hardly cause a fading of memory so pronounced. The witnesses were skilled mechanics, intimately acquainted with the principles and details of the two types of machines. Furthermore, the fundamental difference between the lathe and cross-roll is obvious to a layman at a glance.

Not only is there not the slightest evidence that the presence and operation of the cross-roll machine were kept secret, but there is positive testimony by H. B. Lynch, superintendent of the galvanizing plant, that outsiders were taken through the plant and shown the machine in "operation."

We believe this evidence clearly shows a prior public use of the patented device, with an exception as to certain claims, within the meaning of the statute. In reaching this conclusion, we have refrained from considering certain documentary evidence offered by defendant consisting of drawings and blueprints claimed to show the construction and principles of operation of the cross-roll machine, inasmuch as there is some question as to the proper identification of such documents.

What this court has previously said of a defense of prior public use, based entirely upon depositions, is applicable here: "If his story is substantially untrue, it is willfully false, and constitutes perjury of the most flagrant type; it cannot be accounted for upon the theory of trick of memory or innocent mistake. * * * To reject such testimony taken as a whole, or to decline to believe it, would, in effect, be to nullify the provision of the statute, by exacting an impossible standard of evidence. The testimony is not contradicted, is not inherently improbable, and would, we think, be accepted as satisfactory and convincing, if not wholly conclusive, in any other kind of case, criminal or civil." Rown v. Brake Testing Equipment Corp. (C.C.A.9) 38 F. (2d) 220, 224.

We are in accord with the District Judge that claims 13, 14, 15, and 20 of Rosener & Doane patent, in so far as they describe a means for simultaneous adjustment of the three feed rollers about axes perpendicular to their axes of rotation, are valid. The improvement over the individual adjustment of each roller in the cross-roll machine is obvious. Both time and wear and tear on the pipe due to imperfect adjustment are saved. As was said by the Supreme Court in Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 318, 29 S.Ct. 495, 500, 531 L.Ed. 805: "A combination is a union of elements, which may be partly old and partly new, or wholly old or wholly new. But, whether new or old, the combination is a means—an invention—distinct from them."

Even though the improvement is slight, it may possess patentable novelty. Republic Iron & Steel Co. v. Youngstown Sheet & Tube Co. (C.C.A.6) 272 F. 386, 390.

An improvement patent, however, must be given a narrow scope. Pacific States Electric Co. v. Wright (C.C.A.9) 277 F. 756, 758. So viewed, we are unable to see how the defendant McEverlast's machine infringes the patentable feature of the Rosener & Doane device. The McEverlast driving disks which propel the pipe spirally through the machine are fixed in rigid bearings attached to the frame of the machine. They are not adjustable. The variation between rotary and longitudinal movement of the pipe is achieved by shifting the position of the pipe relative to the pipe's point of contact with the edges of the stationary driving disks. This means is distinctly different from that characterized by the widely adjustable Rosener & Doane feed rollers.

Affirmed.