**PANAVIEW DOOR AND WINDOW CO.,**
a corporation, Plaintiff,

v.

**Fred H. VAN NESS et al., Defendants.**

**No. 18127.**

United States District Court
S. D. California, Central Division.

Sept. 15, 1955.

254

and the motion of plaintiff to amend the complaint, came on for hearing on July 18, 1955. The plaintiff was represented by Thomas P. Mahoney, and the defendants were represented by David Mellinkoff and by Charles G. Lyon.

It was stipulated by the defendants at the hearing that the motion of the plaintiff to amend the complaint be granted, whereupon the Court granted such motion. The amendment to the complaint simply struck from lines 18 to 20, page 2, paragraph 7, of the complaint, the following words: "and, since that date, Abraham Grossman has been and still is the owner of these Letters Patent", and placing a period in line 18 after the word "closure".

The several motions of the defendant are joined in a single notice but will be considered and treated separately.

The first motion is to dismiss Count I of the complaint for want of capacity of the plaintiff to sue for patent infringement in its own name, and for failure to join a necessary and indispensable party plaintiff.

Paragraph 8 of the complaint alleges that the plaintiff has been and still is an exclusive licensee under said United States Letters Patent No. 2704866. This allegation, standing alone, is not sufficient to establish that the plaintiff has the right to sue in its own name for infringement. Maguire Industries v. Harrington & Richardson Arms Co., D.C., 79 F.Supp. 81. "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 335, 34 L.Ed. 923. The deposition taken of the President of the plaintiff has attached to it as Defendants' Exhibit "A", a photostatic copy of the agreement between the patentee and the plaintiff. Paragraph XI of such agreement, under the heading of "Infringement", reads as follows:

"Each of the parties agrees to notify the other promptly of any and all in-

Thomas P. Mahoney, Los Angeles, Cal., for plaintiff.

David Mellinkoff, Beverly Hills, Cal., and Charles G. Lyon, Los Angeles, Cal., for defendants.

JERTBERG, District Judge.

The motions of the defendants to dismiss the action, for summary judgment, to strike certain portions of the complaint and for more definite statement

fringements of the Licensed rights by others not party to this agreement should either party discover any cause for believing that such infringement is taking place and to provide all information which it has available thereon. Licensor agrees, upon receipt of written demand therefor from Licensee, either to institute and vigorously prosecute a suit or suits for such infringement or to permit Licensee to do so either in its own name or jointly with the name of the Licensor."

■■ Since there is no allegation in the complaint that the Licensor permitted the plaintiff to institute this action in its own name, the motion to dismiss Count I of the complaint must be granted, but with leave on the part of the plaintiff to file an amended Count or an amendment to the Count within ten days after notice of this order.

■ The second motion is for summary judgment as to Count I under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that the patent in suit is invalid and void under Section 102 of the Patent Act of 1952, 35 U.S.C.A. § 102, for the reason that the purported invention of the patent in suit was described in a printed publication in this country and was on sale in this country and had been abandoned by the patentee more than one year prior to the date of the application for patent. An indispensable prerequisite to such a judgment is the absence of a material question of fact. The Court has examined the affidavits and documents submitted by both parties as well as the deposition of Abraham Grossman above referred to.

■ The affidavits of Ferenc Spreitzer, Charles Wagner, and Brent Cahoon filed on behalf of the defendants establish without contradiction that brochures of the "Panaview Door" were published in "Sweet's Catalog" which was published and circulated in the United States in January of 1953. Defendants have not shown by affidavits or otherwise that the published brochures disclosed the details shown and claimed in the claims of the patent in suit. The affidavit of Robert C. Comstock filed on behalf of the plaintiff states that he is a patent lawyer; that he has studied and is familiar with the disclosures of Letters Patent No. 2704866; that he has studied the photostatic copy of the brochures attached to the affidavits of Ferenc Spreitzer and Brent Cahoon, and that there is no disclosure in the brochures of the details shown and claimed in the claims of the patent in suit. There is, therefore, an issue of fact which must be determined regarding defendants' claim that the patent in suit is invalid for the reason that the invention of the patent was described in a printed publication in this country more than one year prior to the date of the application for patent.

The affidavit of Fred H. Van Ness filed on behalf of the defendants states in substance that the annual show of the National Association of Home Builders held in Chicago, Illinois, is, from the manufacturers' viewpoint, designed to stimulate interest in the manufacturers' products, and for the sale and offering for sale of such products. The affidavit of Robert C. Comstock, previously mentioned, states that one of the purposes of such show is to test consumer response to the products displayed there.

In the deposition of Abraham Grossman, President of the plaintiff, and the licensor of the patent in suit, is testimony that the Panaview Door was displayed at the National Association of Home Builders in Chicago in January, 1953, and that the door was made in accordance with the drawings and specifications of Patent No. 2704866. On the subject of whether the door was on sale at such show the deposition is as follows: (Page 25, line 12 to page 29, line 18)

"Q. You mean to say that none of the so-called test units were out prior to the spring of 1953? A. No.

"Q. You took orders for them before that time, did you not? A. Possibly a little before that time.

Possibly we might have taken orders for them, we might have taken orders even during the time of the show, for instance, in Chicago, where a distributor would be interested, and he wanted a door to test out and put in a show room, for instance. Well, this is something that I am referring to, we would make up a sample for him and let him try it, and we would be in touch with him constantly to see how it proved out for him, and see how it meets with our claims.

"Q. Well, when is the first time that either Glide or Panaview, the corporations, took an order for the door that is shown in these patent papers you have identified here? A. I don't recall, I don't recall. I would say that around the early part of 1953 would be a possibility.

"Q. At least as early as January, 1953, at the show; is that correct? A. Yes, possibly.

"Q. By 'possibly' what do you mean? A. I mean possibly we could have at that time. I don't recall. We might have had correspondence after the show, where some of these people might have exhibited a little interest through correspondence, and then said, 'Well we would like to place an order for such and such'. Now, it could have been after the show or possibly during the show. I really do not remember.

"Q. Who represented you at the show? A. I did.

"Q. You were there? A. And my associate, Mr. Reznick, was there.

"Q. Both you and Mr. Reznick were there at the show on behalf of this door described in the patent papers No. 2704866; correct? A. That is correct.

"Q. And you were both there as representatives at that time of Glide; is that correct? A. Yes.

"Q. Now, do you or do you not know, Mr. Grossman, whether or not you or Mr. Reznick took any orders at that show for this door? A. No, I don't know. As a matter of fact, I rather doubt it for this reason: We had nothing to take an order with at the show. We weren't there to take orders for the unit. All we were there for was to actually feel out the interest of various distributors around the country for that kind of door, which was a K.D. door. That was the first, to our knowledge, of any sliding door, K.D. form, that was on the commercial market, and before we went to it with all our energies and the finances that it would take to put it across we wanted to make sure that it was accomplished and that was the purpose of the show, and I am almost certain no orders were taken during the show.

"Q. When did you first have a distributor for the door, either Glide or Panaview? A. Well, shortly after the show people have written in requesting they be a distributor.

"Q. When did either Glide or Panaview have a distributor in any part of the United States for the door? A. For this door that you are talking about in the drawing?

"Q. Yes, yes. A. I would say shortly after the show people asked to be distributors, and those that we deemed to be a good possibility for a distributorship we told them they could be, and then they just awaited for the delivery of the door, the commercial delivery of it.

"Q. Did you have your first distributor for this door in January of 1953? A. I would say no.

"Q. In February of 1953? A. Possibly in February.

"Q. Who was that first distributor? A. Well, I think Mr. Norman Berris, B-e-r-r-i-s in Chicago.

"Q. He became a distributor for the door in February of 1953; correct? A. I think so, yes.

"Q. Does he do business under that name? A. I think so. I am not sure just what his firm name is. I think it is under "Berris".

"Q. B-e-r-r-i-s? A. Either that or B-e-r-i-s.

"Q. Is he still a distributor for the door? A. Yes, he is.

"Q. Who was your second distributor? A. I don't recall now how they came in order at all, but all our records are there to show that progression took place.

"Q. Are these records you speak of— A. The reason I tell you about this is that being—the show being in Chicago, where we talked about it, the possibility of him being a distributor, is fresh in my mind, and I know that was the first consideration.

"Q. Was the appointment of Mr. Berris as a distributor pursuant to a written agreement? A. That I don't recall. It might have been just oral.

"Q. That would have been an agreement between Berris and Glide; is that right. A. Yes. Berris was already a distributor of Glide's.

"Q. Oh, I see. A. So it was just a natural—natural that he continue on with this product.

"Q. How many distributors for the door did you appoint in February of 1953? A. There again I don't recall what it was. I would have to go into the records to check that."

It does not appear by affidavits or otherwise, that any sale was made at the show.

In the light of the present state of the record the Court is unable to state that the purpose and object of the display of the door at the show was the placing of the door "on sale". It is the view of the Court that there is presented here an issue of fact which should be resolved after trial on the merits. As stated in Lensch v. Metallizing Co. of America, D.C., 39 F.Supp. 838, at page 842, "As to what is a public use or an offer for sale is a question of fact. It has been repeatedly held that the burden of proof of an anticipation is upon the party asserting it, and that this burden must be sustained by clear and convincing evidence. The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154; Deering v. Winona Harvester Works, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153; Symington Co. v. National [Malleable Castings] Co., 250 U.S. 383, 39 S.Ct. 542, 63 L.Ed. 1045; Eibel [Process] Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Stoody Co. v. Mills Alloys, 9 Cir., 67 F.2d 807, Judge Sawtelle. Cf. Paraffine Companies v. McEverlast, Inc., 9 Cir., 84 F.2d 335, Judge Denman. And it has also been held that abandonment must be proved in like manner. Research Products Co. v. Tretolite Co., 9 Cir., 106 F.2d 530, 534; Byrne Mfg. Co. v. American Flange & Mfg. Co., 6 Cir., 87 F.2d 783; Walker on Patents, Deller's Edition, § 100.

"Experimental use is never public use within the meaning of the statute, if it is conducted in good faith for the purpose of testing the qualities of the invention. Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5 [613, 616], 59 S.Ct. 675, 83 L.Ed. 1071; Research Products Co. v. Tretolite Co., supra; Walker [on Patents], §§ 84 and 85; Meigs' 'Time, the Essence of Patent Law,' p. 8.

"As hereinbefore indicated, it is alleged in defendants' answer that the invention in suit was 'known and used and circularized and offered for sale for more than two years,' etc. It is provided, in effect, in R.S. 4886, as amended, that a patent is invalid if the alleged invention has been patented or described in any printed publication in this or any foreign country before the invention or discovery thereof for more than two

years prior to the patent application. (See R.S. 4920, as amended, 35 U.S.C.A. § 69). Whether by 'circularized' the pleader meant 'published', or 'offered for sale', the character of evidence required under this provision in proof thereof should be, in principle, no different from proof of anticipation or abandonment.

"When these rules of law are applied to the evidence on this point, we find it falls far short of the required proof, to establish that the patent invention 'was known and used and circularized and offered for sale' more than two years prior to April 13, 1936, the date of the application therefor. No physical or documentary evidence of substantial probative value was supplied, and the oral testimony was contradictory and unsatisfactory. Certain it is that the testimony did not show satisfactorily that the one metal spray gun, manufactured by plaintiffs, was subjected to anything more than a private or experimental use, prior to April 13, 1934. Nor was any publication properly shown within the meaning of the statute. Granting the witnesses to be of the highest character and entirely conscientious in their desire to tell the truth, oral testimony, unsupported by exhibits or documents, tending to show use, sale, abandonment or publication, is unsatisfactory, particularly if the oral testimony be taken after the lapse of several years. The Barbed Wire Patent, supra; Deering v. Winona Harvester Works, supra.

"Defendants did not specifically plead the defense of constructive abandonment and did not comply with the statute in giving thirty days' notice thereof prior to trial. Upon the objection being raised, Judge James permitted an amendment to the answer to incorporate the defense. He then adjourned court for one day to give plaintiffs an opportunity to make the necessary preparations for meeting the additional defense. Because of our view, as hereinbefore expressed, on the sufficiency of the evidence, it is unnecessary for us to determine whether or not the new Federal Rules of Civil Procedure, 28 U.S.C.A., following section 723c, abrogate or supersede this statute."

A summary judgment "should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts." Zampos v. United States Smelting, Refining & Mining Co., 10 Cir., 206 F.2d 171, 173.

The motion for summary judgment as to Count I is denied.

The third, fourth, sixth and seventh motions are for summary judgment on Count II, and to strike the whole of Count II, and to dismiss Count II on the grounds that the matters set forth therein had already been adjudicated in a prior suit between the parties and their privies; and that the Court has no jurisdiction, and that Count II fails to state a claim against the defendants upon which relief can be granted.

The eighth, ninth, tenth and eleventh motions relate to Count III of the complaint and are respectively for summary judgment under Rule 56 and to strike under Rule 12(f) on the ground that the matters have already been adjudicated in a prior suit between the parties and their privies; that the Court lacks jurisdiction of the subject matter of the action; and that the count fails to state a claim against the defendants upon which relief can be granted.

Since the decision in the former action, Panaview Door & Window Co. v. Van Ness, D.C., 124 F.Supp. 329, a patent has issued. The question of the validity of the patent is one of the issues in the present action.

The second cause of action states a claim for unfair competition, and the third cause of action alleges a claim for unfair competition based upon false and misleading advertising.

This Court has jurisdiction of unfair competition suits when joined with a "substantial and related claim under the copyright, patent or trade-mark laws." 28 U.S.C.A. § 1338(b).

In Panaview Door & Window Co. v. Van Ness, D.C., 124 F.Supp. 329, there

was no claim for infringement of the patent mentioned in Count I. The absence of such claim or a claim for infringement of a trade mark or a copyright formed the basis on which the Court dismissed such action for lack of jurisdiction.

 "While a dismissal of an action on the sole ground that the court has no jurisdiction of the subject matter or of the parties is a conclusive determination of the fact that the court lacks jurisdiction, it is not an adjudication of the merits and will not bar another action in the proper tribunal for the same cause; nor will it bar a second suit where the pleader in the prior suit failed to allege some essential jurisdictional fact which later is supplied in a new pleading. It is quite true that if a suit be dismissed solely for lack of jurisdiction because there is no diversity of citizenship between plaintiff and defendant, that plaintiff may bring suit on the same cause of action in the same district if he subsequently becomes a citizen of another state so that diversity of citizenship then exists between plaintiff and defendant; and the dismissal of the first suit is not a bar to the second in the same court. But in such subsequent suit a different state of facts is presented which alters the situation and calls for a new determination by the court." Ripperger v. A. C. Allyn & Co., D.C., 37 F. Supp. 373, 374, affirmed 2 Cir., 113 F.2d 332.

 Motions three, four, six, seven, eight, nine, ten and eleven are denied for the reasons herein set forth.

Motions 12 and 13 are for more definite statement as to Counts II and III in the particulars set forth in said motions on the ground that the complaint is so vague and ambiguous in respect to such particulars that defendants cannot reasonably be required to frame an answer thereto.

 It is the view of the Court that the complaint conforms to the requirements of Rule 8 of the Federal Rules of Civil Procedure, and that the complaint is not so vague or ambiguous that the defendants cannot reasonably be required to frame a responsive pleading. The information sought is primarily evidentiary and may be secured under the various discovery procedures which are available. The examination of the deposition of Abraham Grossman discloses that some of the particulars sought in the motions have been obtained. Motions twelve and thirteen are therefore denied.

The defendants are granted thirty days after notice of this Order in which to file their answer to the complaint and the Clerk of this Court is directed forthwith to mail copies of this Order to all counsel.