## NATIONAL PHONOGRAPH CO. v. LAMBERT CO.

(Circuit Court of Appeals, Seventh Circuit. August 1, 1905.)

No. 1,154.

1. PATENTS—PRIOR PUBLIC USE—LENGTH OF USE.

The use of a process by the patentee and his employés for more than nine years before application was filed for the patent, without any substantial change therein, during which time some 8,000 articles were produced for commercial purposes, cannot be considered experimental, although it is claimed that improvement was constantly sought, but is a public use which invalidates the patent.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 92–97.

Priority and continuance of public use of invention as affecting patentability, see note to Eastman v. Mayor, etc., of City of New York, 69 C. C. A. 646.]

2. SAME—PROCESS OF DUPLICATING PHONOGRAMS.

The Edison patent, No. 713,209, for a process of duplicating phonograms, is void for prior public use of the invention.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

For opinion below, see 125 Fed. 388.

Philip C. Dyrenforth and Richard M. Dyer, for appellant.

Thos. F. Sheridan and John R. Bennett, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge. The bill filed by the appellant, National Phonograph Company, for alleged infringement of Edison's patent, No. 713,209, of November 11, 1902, for "process of duplicating phonograms," was dismissed on final hearing, for want of equity, and this appeal is from the decree so entered. The patent in suit is one of a succession of patents issued to various patentees for methods and means

for reproducing phonograph records—following the earlier inventions of Bell and Taintor and of Edison, for cylindrical phonogram blanks, considered by this court, in National Phonograph Co. v. Lambert Co., 125 Fed. 922, 60 C. C. A. 632. If patentable invention appears, in the light of the prior patents, we are satisfied that it is narrow in scope and not entitled to the broad interpretation of the claims for which the appellant contends upon the issues of infringement. We concur, however, in the conclusion of the trial court that the defense of prior public use of the patent process is clearly established, so that consideration is unnecessary of the issues involving both the merits of the claims in suit and their invasion by the appellee; nor is comment needful on the general equities discussed in the briefs and oral arguments. While the course adopted by the inventor, in the early conception and use of the process, in delaying the application for patent and in respect of changes made in the claims during the long pendency in the Patent Office, is singular and complex, the fact of public use, within the statutory inhibition (section 4886, Rev. St.; 3 U. S. Comp. St. 1901, p. 3382), is free from complication and settled, beyond doubt, by the testimony of the inventor and his assistant. The objection now urged on behalf of the appellant to the competency of this evidence is untenable in any view. Not only was it introduced by the appellant as a part of the prima facie case in support of the bill, and thus not open to its objection, but the testimony is plainly admissible, as part of the interference record (entering into the "file wrapper and contents" as certified), by way of declarations or admissions of the applicant in the course of the proceedings to obtain his patent.

The substantial facts upon the issue of prior public use may be briefly summarized. In 1888 the process described in the patent was discovered by Mr. Edison, but no application for a patent was filed until about 10 years thereafter, although three patents in the same art—one for a "process of duplicating phonograms" and two for "phonogram-blanks" —were issued to him in May, 1888. On October 26, 1888, he filed a caveat in the Patent Office which clearly described the process. The application for a patent was filed March 5, 1898, and allowance was delayed, for one cause and another, until November 11, 1902, when the patent was issued. It was assigned to the appellant December 16, 1902. The testimony discloses no change made in the process after the conception of 1888; and Mr. Edison testified, in the interference proceeding, that "so far as the process is concerned, it is just the same now, in a broad sense, that it was" in 1888; that the work upon it thereafter "was directed only towards the improvement of small details to make it commercial" and "perfect"; and that "the duplicate copies made by this process" as early as 1891, "were perfect as far as quality was concerned." He further testifies, that Dr. Schulzberg was the first to "carry out the process under his direction," in October, 1888, and Charles Wurth, another assistant, entered "on working up the methods for commercial production of the duplicates." in the spring of 1889; and that "he has produced a great many matrices, and has produced a great many copies from the matrices by expansion, which have been used commercially." Mr. Wurth, in the same proceeding, produced a matrix of

1891, containing a phonographic record made under the process, and testified that he "made over a thousand of them, of which this is one"; also that he made different copies or duplicates during the interim between 1889 and 1898, to the number of "about 6,000 or 7,000, perhaps 8,000, all by the same process."

Notwithstanding the evidence thus authenticated that the process was constantly "used commercially for duplicating phonograms," it is contended that the use was not commercial or public in the sense of the statute, but merely "experimentation necessary to perfect" the process. This contention is unsupported by testimony, and is without force in any view under the authorities. The practice described by these witnesses is both public and commercial use of the process, and plainly was not of the experimental character, "solely to test the qualities of the invention" (Egbert v. Lippmann, 104 U. S. 333, 336, 26 L. Ed. 755), which is the well-recognized exemption from the public use prohibited by the statute. While it is true that the testimony reiterates the fact that improvement was sought constantly by the assistants, who were conducting the operations and "duplicating phonograms," no actual change in the process, after the original conceptions described in the caveat, is pointed out; and, if the operations thus described by the witnesses were open to inference of experimental use at any stage, no evidence appears to ascertain the limits of such use, the need of tests, or the reasonableness of the time, either required or employed, in making them. As well stated in Walker on Patents (3d Ed.) § 94:

"Experimental use becomes public use when it extends further, either in time or in number of instances, than is reasonably required to test the invention."

Public use, however, continuing more than nine years in commercial operations, must be presumed from the testimony, and such fact is neither controverted nor modified by other proof, so that it is immaterial whether experimental use occurred at any stage. The statute invalidates the patent, if the invention described therein was in public use or on sale earlier than two years before the application was filed. That use so established was public use, in violation of the statute, and not within the well-defined meaning of experimental use for testing the invention, is well settled under the authorities. These citations are deemed sufficient: Worley v. Tobacco Co., 104 U. S. 340, 343, 26 L. Ed. 821; Smith & Griggs Mfg. Co. v. Sprague, 123 U. S. 249, 256, 8 Sup. Ct. 122, 31 L. Ed. 141; Eastman v. Mayor, etc., of City of New York (C. C. A.) 134 Fed. 844, 851, and cases reviewed.

The decree of the Circuit Court, conforming to this view, is affirmed.