NEW YORK PHONOGRAPH CO. v. NATIONAL PHONOGRAPH CO. et al.

(Circuit Court, S. D. New York. February 5, 1908.)

1. PATENTS—LICENSE—CONSTRUCTION.

An exclusive license to sell phonographs within a stated territory granted by an assignee of patents therefor from the patentee, with the further right to such improvement patents as should be granted to him within a term of 15 years, must be construed with reference to such patents and as covering only phonographs containing the patented inventions and improvements which are owned by the licensor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 305.]

2. SAME—SCOPE—RIGHTS OF LICENSEE AS AGAINST THE LICENSOR.

Where the executory provisions of such contract of assignment to the licensor, which required the patentee to assign future improvement inventions, also required the assignee corporation to pay to him annually a stated sum for experimental expenses and to pay the cost of the future patents, and by reason of its insolvency and dissolution it failed to make such payments, the assignor was not thereafter bound to make improvements or patent his inventions for the benefit of the assignee, and such patents as he did procure did not inure to the benefit of the assignee nor its licensee, nor was a purchaser of the assets of the assignee with notice of the license bound to fulfill such executory agreement for the licensee's benefit.

3. SAME.

A provision of a license contract prohibiting the licensor from granting to others any rights for the use of phonographs or supplies therefor within the licensed territory construed, and *held* limited to the phonographs and supplies manufactured under the patents and which were covered by the license.

4. SAME.

A grantor of an exclusive license under patents within a certain territory, and also its successors, who are in privity with it as to such license, are estopped, as against the licensee, to deny the validity of such patents, or that they expired before the term for which they were granted by reason of the expiration of prior foreign patents for the same inventions.

5. SAME—VIOLATION OF INJUNCTION—CONTEMPT OF COURT.

A defendant, which, as successor to the grantor to complainant of an exclusive license to sell and use within a certain territory phonographs and phonographic supplies embodying patents owned by the licensor,

was enjoined from violating such license agreement by selling such phonographs and supplies within the licensed territory *held* in contempt of court for a violation of such injunction.

In Equity. Motion for attachment for contempt for violation of injunction.

Tomlinson, Tompkins & Tomlinson (Louis Hicks, John C. Tomlinson, and Millard F. Tompkins, of counsel), for complainant.

Robinson, Biddle & Benedict (William J. Wallace and Charles L. Buckingham, of counsel), for defendants.

HAZEL, District Judge. This is a motion for an attachment against the defendant, National Phonograph Company, for violating the injunctive decree of this court. After an exhaustive discussion of the issues herein, this court at final hearing reached the conclusion that the complainant was entitled to protection of its exclusive license contract rights as evidenced by the contracts dated October 12, 1888, February 6, 1889, and July 1, 1893 (see 136 Fed. 600, for statement of facts and opinion), and its decree was subsequently affirmed by the Circuit Court of Appeals. 144 Fed. 404, 75 C. C. A. 382. The effect of the injunction is disputed. It reads as follows:

"Now, therefore, we do strictly command, enjoin and restrain you, the National Phonograph Company, and you, its officers, agents, clerks, servants, employés, attorneys, successors, assigns, associates, dealers, confederates and all persons in privity with the National Phonograph Company, and each and every of you under the penalty that may fall thereon, perpetually from directly or indirectly, selling or leasing within the state of New York, phonographs and supplies therefor, to others than complainant and from using within the state of New York, phonographs and supplies therefor, and from causing to be sold or causing to be leased or causing to be used, within the state of New York, phonographs and supplies therefor, by others than complainant, and from selling for use or licensing for use, within the state of New York, phonographs and supplies therefor, by others than complainant in violation of the provisions of and of the rights of the complainant under certain contracts as extended, bearing date October 12. 1888, between the North American Phonograph Company and the Metropolitan Phonograph Company, and also between Thomas A. Edison, the Edison Phonograph Company, the Edison Phonograph Works, the North American Phonograph Company and Jesse H. Lippincott, and a contract bearing date the 6th day of February, 1889, between the North American Phonograph Company and John P. Haines, and a contract bearing date July 1, 1893, between complainant and the North American Phonograph Company."

The question is: Does the injunction restrain the use and sale by the defendant within the licensed territory of phonographs and supplies generally, or does it simply restrain the use and sale in the licensed territory of phonographs and supplies which embody the patents and inventions of Thomas A. Edison owned by complainant's licensor as restricted by its dissolution for insolvency and the sale of its assets?

The conclusions of the court that the rights of the complainant sprung from the contractual relation, that it was not chargeable with laches in the enforcement of its rights, that there was an extension of the license, that rights and privileges under the contract were not granted in perpetuity, that complainant's exclusive territorial rights

at the date of the decree had been wrongfully invaded by the defendant, and that the complainant had not forfeited its license rights, must be regarded as res judicata. Assuming the jurisdiction of the court, the rule is well settled that the order of the court must be strictly obeyed, even though it appears to have been erroneously made or to have given broader relief than was justified or warranted by the facts. To adjudge the defendant guilty, however, of a violation of the injunction, resort must be had to the decision as interpreted and construed by the court.

The defendant contends that on the date of the injunction it abandoned and dispensed with the use in its talking machine of certain unexpired patents issued to Mr. Edison, and that no legal right exists to this proceeding. To intelligently pass upon the question presented, we must not overlook the original contract by which the title of the phonograph patents and the territorial rights were granted "in perpetuity," nor the provisions binding Mr. Edison to assign patents and improvements under certain conditions for a period of 15 years from August 1, 1888. This court in its former decision held that a license to manufacture and sell a patented article could not be extended beyond the life of the patent, and by the term "in perpetuity" the parties could not have intended, in the absence of express limitation, to prolong such license rights for a period beyond the life of any improvement or patented invention. The American Company, by the contract of October 12, 1888, secured the exclusive title and interest in and to the phonograph patents, inventions, and improvements for such period as the patentee then had or might, as provided in paragraphs 4 and 5 of the contract of August 1, 1888, thereafter acquire the monopoly of his inventions. It is inconceivable that the complainant could obtain any greater or different rights than had its licensor. Properly interpreted, the decision of the court must be deemed to hold that the complainant did not buy the right to sell, use, or let phonographs and appliances separate and distinct from the patents under which they were manufactured. The language of the bill apparently supports this view. Moreover, the recitals in the numerous contracts emphasize the assignment of the phonograph patents and improvements. Concededly the phonograph and appliances are referred to in general terms also, yet, construing the original and subsequent contracts in their entirety, as we must to ascertain the intent of the parties, I think they intended to be understood as contracting in relation to phonographs and supplies which were invented by Mr. Edison, and not in the broad sense contended by the complainant. The provisions of paragraphs 4 and 5 of the contract of August 1, 1888, are of essential importance. They were wholly of an executory character and bound the North American Phonograph Company to pay the sums of money specified for experimental expenses. Failing in this undertaking, such executory provisions, upon the dissolution of the said company and sale of its assets, became inoperative, and in my estimation Mr. Edison was not thereafter obliged to make improvements or patent his inventions for the benefit of the North American Company. People v. Globe Mu-

tual Ins. Co., 91 N. Y. 174; Griffith v. Boom & Lumber Co., 46 W. Va. 61, 33 S. E. 125; 10 Cyc. 1312; Bradford Belting Co. v. Kisinger-Ison Co., 113 Fed. 811, 51 C. C. A. 483.

The comfirmation agreement by which the Metropolitan Phonograph Company received renewed assurances of its contract rights, notwithstanding the failure of Mr. Lippincott and the North American Company to comply with certain conditions of the earlier agreement, did not suspend or annul the existing obligation to perform or pay for the experimental expenses in making improvements upon the phonograph and for procuring patents nor after the dissolution operate as a waiver thereof. It is probable, if creditors or parties in interest had offered to perform the contract of the North American Company prior to sale of its assets, that Mr. Edison could have been compelled to assign his later inventions or improvements; but, without compensating him for experimental expenses or paying for the patents of the improvement subsequent to the dissolution, I am unable in the absence of fraud, to perceive any force in the contention that the complainant is entitled to the benefits of such later improvements. The fourth paragraph provides that inventions and improvements should be assigned to the company "without further compensation"; but Mr. Edison probably would not have been obliged to conduct any experiments as a result of which improvements could have been made, unless remunerated as specified in the fifth paragraph. The compromise agreement with the receiver of the North American Phonograph Company specifically refers to claims for royalties and damages, and not to payment of the annual amounts under paragraph 5. It is true that the principle of the cases cited in my former opinion is substantially to the effect that a purchaser of the assets of an exclusive licensor of a patent with notice of the existence of license rights succeeds to the ownership of the patent and the rights and responsibilities of the licensor. This principle, however, is not thought broad enough to justify the holding in this case that the defendant was bound to fulfill the condition imposed by paragraphs 4 and 5, which, as we have seen, complainant's licensor was unable to perform.

The so-called negative covenant: The Haines contract, dated February 6, 1889, in the first provision prohibited similar grants to others of any rights for the use of the phonographs or supplies therefor, for the licensed territory during the period for which the license was granted. Much reliance is placed by complainant upon the phraseology of this provision, which refers in broad terms to phonographs and phonographic supplies. There are other portions of the contract from which it may fairly be argued that all "phonographs delivered were to be phonographs of the contract"; that is to say, that the grantors could not sell or license phonographs of any kind, patented or unpatented, except by permission of the licensee. Yet the contracts in their entirety, together with the situation and circumstances, are believed to require a restriction of the negative covenants of the complainant's predecessors to the phonographs and phonographic supplies manufactured under the Edison patents and improvements prior to the dissolution of the American Company and the sale of its as-

sets. Clause 4 of the agreement of February 6, 1889, seems to support such view for it states that the phonographs and supplies which were agreed to be delivered to complainant were "made and to be used under the patents and rights herein described during the continuance of this agreement."

I now come to a consideration of the question: Has the defendant in the production of its talking machine used the patents, inventions, and improvements made by Mr. Edison during the period from August 1, 1888, to February 18, 1896, the time of sale of the assets of the North American Phonograph Company? The affidavits read on the motion show that the so-called gold moulded records used by the defendant in the state of New York were manufactured under Edison's basic patent, No. 484,582, dated October 18, 1892. The defendant contends that such patent is not infringed by the use or sale of its product, and, to sustain infringement, that it must be proven that the defendant actually produced the process within this state. Inasmuch, however, as the rights of the complainant were contract rights, this contention is not maintainable. That said process for sound producing records was manufactured by the Edison Phonograph Works, and is used and sold by the defendant corporation to its customers, jobbers, and agents in the licensed territory, is undeniable. That the process was trivial and a mere feature or step in the general process resulting in a mold for making the record is thought unimportant. Edison patents, Nos. 414,760 of November 12, 1889, 430,274 and 430,-278 of June 17, 1890, were used by the defendant at the date of the injunction and in violation thereof, although such patents have since expired; and the unexpired patents, Nos. 448,780 of March 24, 1891, 465,972 of December 29, 1891, 484,583 and 484,584 of October 18, 1892, 499,879 of June 20, 1893, and 513,097 of January 28, 1894, are used by the defendant in the manufacture of its phonographs and supplies, and, moreover, are used, let, or sold in the state of New York through its jobbers, dealers, or selling agents in violation of complainant's exclusive rights. The defendant also continues to wrongfully use patent No. 713,209, issued November 11, 1902, subsequent to the insolvency of complainant's licensor. Such invention was held to have been made in 1888, as appears from the decision of the Circuit Court of Appeals in National Phonograph Company v. Lambert, 142 Fed. 164, 73 C. C. A. 382.

The defendant asserts that some of the patents enumerated are invalid for lack of invention or prior use, and that others, which had first been patented in foreign countries, have expired. Under the circumstances of this case, the defendant must be estopped to deny the validity of the patents in suit granted to Mr. Edison against this complainant. Mathews Co. v. Lister (C. C.) 154 Fed. 490; Mellor v. Carroll (C. C.) 141 Fed. 992; Hurwood Co. v. Wood (C. C.) 138 Fed. 835; Continental Co. v. Pendergast (C. C.) 126 Fed. 381; Consolidated Co. v. Finley Co. (C. C.) 116 Fed. 629; Force v. Sawyer Co. (C. C.) 111 Fed. 902. These adjudications emphasize the point that a patentee and a corporation controlled by him are in privity, and both are estopped to assert the invalidity of the patent against an assignee thereof. Nor can the defendant successfully insist that such

patents have expired, since a prior foreign patent for similar invention has become the property of the public. United Shoe Machinery Co. v. Caunt (C. C.) 134 Fed. 239. Rev. St. § 4887 (U. S. Comp. St. 1901, p. 3382), provides that patents which have been patented previously in a foreign country shall be limited to expire with the foreign patent; but, as the right of the complainant was derived from the exclusive license in controversy, the limitation contained in the statute is believed to be inapplicable. The United States Edison patents on their face conveyed monopoly rights for a period of 17 years, and they make no reference to any foreign patents. Although in United Shoe Machinery Co. v. Caunt, supra, the defendant expressly obligated himself not to contest the validity of a patent licensed by him, I regard the principle announced there as not inapt to the case at bar.

The next point argued by counsel for defendant is that the defendant can, without violating the terms of the injunction, sell and license in New Jersey phonographs and phonographic supplies for use in the territory licensed to the complainant. This question is not open for review or further consideration. In the former decision it was held, for reasons there stated, that the defendant had wrongfully invaded the territory of the complainant.

A case of unlawful use of the patents and inventions hereinbefore specified in complainant's territory and a violation of the injunction granted on March 26, 1906, has been made out, and such use of the phonographs and supplies having been intentional the defendant is guilty of contempt.

The record of the trial and of this motion and briefs submitted are tremendously voluminous. The expenses of complainant for printing, etc., and preparations of this motion must have been large. Under the circumstances, the judgment of the court is that the defendant pay a fine of $2,500, $1,500 of which shall be paid to the complainant for expenses incurred in the prosecution of this motion, and the remainder to the United States. Christensen Eng. Co. v. Westinghouse Co., 135 Fed. 774, 68 C. C. A. 476.

Attachment may issue accordingly.