## ECLIPSE MACH. CO. v. E. KRIEGER & SON, Inc.

No. 179.

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1937.

W. B. Kerkam, L. H. Sutton, and R. H. Hudson, all of Washington, D. C., and Thomas J. Byrne, of New York City, for appellant.

Pennie, Davis, Marvin & Edmonds, of New York City (Dean S. Edmonds and George E. Faithfull, both of New York City, and Roy H. Olson and John A. Marzall, both of Chicago, Ill., of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The patents sued on, to Kennington No. 1,527,588, granted February 24, 1925, for gearing for starting internal combustion engines, and to Bergmann No. 1,254,-196, granted January 22, 1918, for automatic clutching or starting device, were held invalid.

The patent to Kennington was held invalid in view of the prior invention by Bendix, Vogtland, and Bijur. This patent is for an automobile engine starter of the mesh and demesh type with spring means to cushion the shock of the starting engine. The appellant says it was a continuation in part of a joint application filed May 25, 1912, by McDermott and Kennington. Claims 10, 11, and 12 are sued on.

This patent, referring to a starting motor, drives an externally threaded shaft upon which is mounted an internally threaded pinion. Upon rotation of the threaded shaft, the pinion moves longitudinally into engagement with a gear operatively connected with the crank shaft of the engine. After the pinion has moved into engagement with the engine gear, its longitudinal movement is arrested by a spring stop on the threaded shaft. The pinion then rotates with the shaft, and, being in mesh with the

engine gear, drives the engine. When the engine starts, the pinion, being driven more rapidly by the engine than it is by the threaded shaft, is moved backward along the shaft until it is out of mesh with the engine gear.

The starter developed by Bijur, disclosed in the patent No. 1,095,696 (application filed March 13, 1912; two months prior to McDermott and Kennington, application of May 25, 1912), is for a motor which drives a threaded shaft through reduction gears. An internally threaded pinion is mounted on the threaded shaft, and at the end of the shaft there is a fixed stop which arrests the longitudinal movement of the pinion after the pinion has moved into engagement with the gear on the engine flywheel. The Kennington application was placed in interference with this patent in the Patent Office with respect to claims broadly covering a starter of the automatic mesh and demesh type. The interference terminated July 19, 1916, in favor of Bijur. Necessarily, further prosecution of the Kennington application was limited to additions claimed to have been made to a transmission of the automatic mesh and demesh type, and this included principally a type of spring; other minor features are not here involved. The difference between Bijur and Kennington lies in the substitution of the spring stop for Bijur's fixed stop.

In the automatic mesh and demesh starter, considerable strain is placed on the whole structure when the rotating motor is suddenly coupled to the stationary engine through the pinion and the threaded shaft. It is desirable to provide some means for reducing the shock which occurs when the rotating starter motor is coupled to the engine. It was well known that a spring could be practically used for reducing shock and strain in a train of gearing. It is with such knowledge that Bendix, Bijur, and Kennington resorted to this expedient.

Kennington in his patent discloses the use of a compression type spring placed at the end of the threaded shaft. It is described in the patent as serving as a spring buffer to gradually stop the outward movement of the pinion. The spring has two functions, first, to act as a buffer to arrest the longitudinal movement of the pinion, and, second, to cushion the shock due to the strain of starting the engine. The claims involving the spring continued in the application from the time it was filed in

1915 until 1922 and were limited to means for performing both of these functions. After 1922, claims, directed broadly to the function of the yielding drive and not limited to the buffer type spring, were inserted. These are claims 10, 11, and 12 in suit. Claim 10 calls for "means automatically yielding in conformity with the resistance of the engine member to rotation for gradually building up torque to overcome said resistance." Claim 11 specifies "means prolonging the period during which initial torque is built up to include time subsequent to the establishment of the driving relation." Claim 12 is for "means for building up the torque beyond the normal torque of the starting means."

When the rotating starting motor and the shaft are coupled to the engine flywheel, the inertia of the engine acts as a brake on the motor, decelerating the motor. Deceleration torque is a force arising from momentum of the motor which opposes this deceleration and acts to overcome the opposition of the engine to the rotation of the motor. This force is developed in any automatic mesh and demesh type of starter whether the spring is present or not. The addition of a spring or yielding drive serves to reduce the rate of deceleration of the motor and, therefore, the intensity of the deceleration torque.

By the fall of 1913, Bendix had developed the form of a starter which, with some minor refinements, was subsequently adopted by the industry. The appellant became interested in this device and built starters according to Bendix design in January, 1914. Appellant obtained an exclusive license under the then pending application of Bendix and included any subsequent developments made by Bendix in transmissions for automobile starters.

The Bendix patent No. 1,124,264 was directed to the use of a yielding driving connection in a starter of the type here considered and was issued January, 1915. The appellant obtained substantial approval of the industry in the validity of this patent throughout its term which extended until 1932. It proved a commercial success of very high order. The specifications of the Bendix patent read that its object was to provide a "simple and efficient means for preventing shock * * * the means provided for the purpose described consists of a yielding driving connection interposed at some suitable point between the motor and the engine element, but preferably between the screw shaft and its pinion."

The preferred location of the yielding driving connection between the screw shaft and its pinion is the location in which the spring is found in the Kennington patent. In three forms shown by Bendix, the spring performs the function of a compression spring as well as that of a torsion spring. In all three the spring is specifically located between the screw shaft and the pinion and therefore between the motor and the pinion. In another figure, the spring is located between the motor and the screw shaft; it is within the large gear on the screw shaft where it acts only as a torsion spring.

In claim 1 of the Bendix patent, the patentee claims the use of a yielding driving connection in an engine starter. It covers broadly the particular type of compression spring shown in the Kennington patent. This claim is not limited to any particular type of yielding driving connection, and the use of the phrase "interposed between the motor and the driving member" is used in a functional sense to include all the forms shown by Bendix whether the spring is interposed between the shaft and the pinion or interposed between the motor and the shaft.

The Kennington structure is covered by claim 1 of the Bendix patent if not, indeed, by claims 5, 17 and 18. Bendix claims are not limited to improvements only. They cover the Kennington structure as it stands—not the structure plus some improvements. The claims of Bendix and Kennington are similar and may not be distinguished at least on any difference of inventive concept. The claim to invention rests upon common ground. Each has to stand or fall upon the issue of novelty and alleged invention in incorporating a spring somewhere in the line of a drive of an automatic mesh or demesh starter. It is significant and indeed controlling that the claims in both patents are based upon the same concept and embrace the common field of their patent disclosure and of the particular commercial art.

■ Moreover, the Kennington application and patent was controlled by the appellant during substantially the entire life of the Bendix patent No. 1,124,264. Appellant asserted the validity of the Bendix patent before the public, secured substantial acquiescence of the trade in its validity, and brought suit asserting its right to monopoly secured by the patent. Now that Bendix patent has expired, appellant should not be permitted to deprive the public of the free use of that invention by asserting at this date the validity of Kennington as a new and different invention than that of the Bendix patent merely because of an alleged new or different use of a compression spring. As exclusive licensee, the appellant was in a position to enjoy the benefits of the monopoly under the Bendix patent as it did for seventeen years.

■ Appellant admits that Bendix conceived the invention and disclosed it in drawings in 1909 and 1910, earlier than the date in January, 1912, claimed for the Kennington application. On the issue of diligence on the part of Bendix, he was not required to exert more than his best efforts under the circumstances with which he was faced. Joy v. Morgan, 54 App.D. C. 110, 295 F. 931; Wayne v. Tew, 53 App.D.C. 336, 290 F. 311; Courson v. O'Connor, 227 F. 890 (C.C.A.7). Diligence consists in reasonable effort directed toward embodiment of an invention in physical form or toward filing an application for the patent. The court below found that Bendix' efforts were unremitting from the time of his conception until the date of filing his application in November, 1913. To be sure, appellant takes a different position on the question of diligence. But under all the circumstances we need not decide this issue, since we are satisfied that Bendix clearly shows knowledge before 1912. He did considerable work toward developing and patenting his invention.

■ Appellant claims, however, actual reduction to practice by Kennington in October, 1913, and bases its claim on a starter then installed on a car. However, it appears that what Kennington did in October and November, 1913, had been done by Bendix at least several months earlier. There is evidence of installation of the "clock type torsion spring" built in August and used in September on a Paige car. The clock type transmission embodies the subject matter of the claims in suit and the starter was satisfactory. About the same time, a starter having a yielding driving connection was used successfully by Bendix on another demonstrating automobile. Bendix built a starter supplied with a compression type spring in the winter of 1912, and as early as March and April, 1913, Bendix used both compression and torsion springs on a starter which he installed in a Buda engine in Chicago. This starter operated

successfully to start the engine and there were no cases of failure. The evidence amply supports the finding of the court below that Bendix reduced his invention to practice before Kennington. But it is argued by appellant that, because of a claimed constructive reduction to practice by Kennington prior to Bendix' actual reduction to practice, Kennington was first. This asserted reduction to practice is the filing of the joint McDermott and Kennington application in May, 1912, but, as found below, this must be rejected because the joint application contains no disclosure of the subject matter of the claims in suit. It discloses a starter similar to that of the patent in suit with a compression spring in the path of the pinion. Unlike the patent in suit, the longitudinal movement of the pinion into engagement is limited by the enlarged ends of the arms contacting with the fixed ring. The function ascribed to the spring in the joint application is as a buffer. The spring is described as "serving as a spring buffer to gradually stop the outward movement of the pinion," and it is stated, "the pinion continues to travel longitudinally of the shaft until it strikes the buffer collar which gradually stops its further movement." There is no suggestion that the buffer spring was intended to or could perform the function of a yielding drive, nor is it, as argued, inherent in the buffer function.

We think there is no disclosure in the joint application, as filed, of the subject matter of the claims in suit—the yielding drive feature, which is appellant's claim to constructive reduction to practice. Therefore, Kennington is relegated to the date of actual reduction to practice which was later than that of Bendix. Bendix was the first inventor because he was prior both in conception and in reduction to practice.

The patent to Vogtland, No. 223,460 filed in Germany May 9, 1909, and published in June, 1910, shows a starter for a large machine such as a rotary printing press and discloses an automatic meshing and demeshing gear for connecting a starter motor to the parts to be started and springs for effecting a yielding driving connection. The yielding driving connection takes up the initial shock of starting the engine member, and the torque applied to the engine necessarily consists of both the electrical torque of the motor and the deceleration torque.

The structural elements of claims 10, 11, and 12 of the patent in suit are found in the Vogtland patent, a patent with the same way of operation. A yielding driving connection is provided for; there is a provision for the automatic withdrawal of the driving member from the driving engagement. There is no evidence that this arrangement would not be entirely satisfactory if the starter were used for starting an internal combustion engine.

There is no reason to grant a monopoly based on the idea of introducing a spring in this type of starter for the purpose of limiting deceleration torque; that is, reducing the shock. Springs had been used, and their use for cushioning purposes was well known. To use one here was simply the obvious thing to do. Concrete Appliances Co. v. Gomery, 269 U.S. 177, 46 S. Ct. 42, 70 L.Ed. 222. The addition of the spring to this mesh and demesh structure did not constitute invention.

The Bergmann patent No. 1,254,196, application filed December 23, 1916, granted January 22, 1918, is for a starter transmission which is said to involve the basic Kennington combination. Herein the spring has a dual function of controlling and utilizing the deceleration torque and of translating the pinion longitudinally into mesh with the flywheel. Claims 1 and 2 are in suit.

A finding below recites that the "prior art discloses engine starters of the type which includes in combination a driving pinion normally out of mesh with the engine fly-wheel and mounted on a motor-driven shaft for axial movement therealong, and a coiled spring associated with the shaft and pinion. In these starters, rotation of the shaft produces relative axial movement between the shaft and pinion to bring the pinion into engagement with the fly-wheel." This is supported by the citation of 13 prior patents which clearly anticipate the claims in suit. Moreover, the device under this patent never appeared on the market. The appellant, owning it since its issuance, never made or sold any commercial devices disclosed. This patent is invalid.

Decree affirmed.