**BROWN INSTRUMENT CO. v. GENERAL ELECTRIC CO.**

**GENERAL ELECTRIC CO. v. MINNEAP-OLIS–HONEYWELL REGULATOR CO.**

Nos. 8478, 8506.

District Court, E. D. New York.

April 22, 1940.

Cooper, Kerr & Dunham, of New York City (W. P. Bair and Will Freeman, both of Chicago, Ill., Thomas J. Byrne, of New York City, and George H. Fisher, of Minneapolis, Minn., of counsel), for Brown Instrument Co. and Minneapolis-Honeywell Regulator Co.

Fish, Richardson & Neave, of Boston, Mass., (Harrison F. Lyman and William R. Woodward, both of Boston, Mass., of counsel), for General Electric Co.

INCH, District Judge.

The above suits have been duly consolidated for trial and will be disposed of by one decision.

By the first suit the plaintiff, Brown Instrument Company, a wholly owned subsidiary of the Minneapolis-Honeywell Regulator Company, has sued the General Electric Company, alleging that the Shafer patent U. S. No. 1,583,496 owned by the General Electric Company interferes with the Phelan-Hotchkiss patent U. S. Re-issue No. 19,235 owned by the Brown Instrument Company, Title 35 U.S.C. Section 66, 35 U.S.C.A. § 66. A supplemental bill was later filed by the Brown Instrument Company alleging that the Shafer patent in-

fringed the said Phelan-Hotchkiss patent. The General Electric Company duly denies any infringement and asserts that Shafer was the first inventor.

By the second suit the General Electric Company sues the Minneapolis-Honeywell Regulator Company for alleged infringement by it of the Shafer patent by reason of the Phelan-Hotchkiss patent. As to this suit the Minneapolis-Honeywell Regulator Company denies any such infringement and contends that Shafer was later than Phelan and further that if Shafer is found to be entitled to priority, nevertheless, there was a constructive abandonment by Shafer of his invention by reason that he allowed same to be in public use for more than two years before he applied for his patent, Title 35, U.S.C. § 31, 35 U.S.C.A. § 31, and finally that Shafer's invention is void by reason of having been anticipated in the prior art.

It will be seen, therefore, that some of these issues flow together such as that of alleged infringement and the invalidity.

But assuming that the claims of Shafer and Phelan-Hotchkiss cover the same invention, Morris v. Kempshall Mfg. Co., C. C., 20 F. 121, Nathan Mfg. Co. v. Craig, C. C., 49 F. 370, the first question necessary to be determined is that of priority.

For convenience the Brown Instrument Company will be referred to as Brown, the General Electric Company as G. E., the Minneapolis-Honeywell Regulator Company as Honeywell, the Shafer patent as Shafer, and the Phelan-Hotchkiss patent as Phelan.

Many material facts have been agreed on by due stipulation and pleading, such as the residence of the parties, the title to the two patents, the manufacture and sale by the G. E. of certain thermostats indicating infringement, if such is found to exist.

The claims of the Phelan re-issue sued on in this suit by Brown are Claims 30-31-32-33-35. The Shafer patent has twenty claims and the G. E. relies upon all except Claims 4-6-7-11-12-13.

Both Shafer and Phelan attempted to carry their dates back of the filing date. Phelan applied for the patent on December 23, 1922, patent was granted July 10, 1928, U.S. No. 1,676,921, but this patent is not in suit.

Phelan applied for a re-issue and this re-issue was granted July 10, 1934, U.S. R.E. 19,235. This re-issue patent is the one relied on by Brown by supplemental bill filed after receipt of the answer of G. E.

Shafer applied for his patent February 23, 1924, patent was granted May 4, 1926, U.S. No. 1,583,496.

It will be seen therefore that while Phelan applied for his original patent December 23, 1922, Shafer did not apply for his patent until February 23, 1924. Thus a period of about one year and two months elapsed after Phelan had applied before Shafer applied. On the other hand, Shafer obtained his patent May 4, 1926, while Phelan did not obtain his patent until July 10, 1928, so that Shafer received his patent approximately two years before Phelan did. Finally, Phelan did not apply for his re-issue patent, which, it is now claimed in this suit, is infringed by Shafer, until July 9, 1930, a period of over four years after Shafer had obtained his patent. These dates may or may not be material but they are interesting in view of this contest between inventors. The original patents were co-pending.

Shafer claims that he invented the subject matter of his patent and reduced it to practice November 24, 1921 (Thanksgiving Day).

Phelan claims that he conceived his idea during the summer of 1921. Sufficient has been shown to carry Phelan's date back to April, 1922. This however would not be enough for, if Shafer discovered his invention in February, 1921, he is the senior of Phelan by approximately six months. A considerable portion of the testimony taken was directed to this issue.

As Phelan first applied for his patent it was necessary for G. E. to convince the court by the clearest and most convincing evidence that though Shafer did not apply for his patent until some time after Phelan had applied, nevertheless, Shafer was in fact the real inventor and discoverer assumedly covered by both patents. Mygatt v. Schaffer, 2 Cir., 218 F. 827. The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154. This was done by Shafer producing before the court convincing witnesses and documents. The efforts of Brown to push the Phelan patent to a date earlier than Shafer was most uncertain and far from satisfactory. The proof offered by G. E. satisfies me beyond any doubt that the testimony as to what

took place at the Shafer home on November 24, Thanksgiving Day, 1921, is true and it establishes, within the requirements for such proof, that Shafer was the first discoverer of the idea. This being so, Brown cannot succeed in defeating Shafer by means of the Phelan patent nor would Shafer infringe Phelan as claimed by Brown. Accordingly, both the original and supplemental bill of Brown must be dismissed with disbursements, but in view of the other suit, without costs. Submit findings.

This brings us to the suit by G. E. against Honeywell. The first question is that of alleged "public use" by Shafer.

There can be no question but that after the event at Shafer's home on November 24, 1921, there followed a period of two years and three months before Shafer made an application for a patent. What use was made of his invention by Shafer during such a period is important. If it was a "public use" Shafer constructively abandoned the invention. Shafer never allowed any use of his device without reserving control over same and at all times, until shortly before his application, he apparently was not entirely satisfied with its commercial possibilities.

Shafer is a telephone engineer with the Bell Telephone Company of Pennsylvania. In 1920 he was stationed in Pittsburg, Pa. He was transferred to Philadelphia in 1921. While he was at Pittsburg he was interested in this question of heat control of a heating system of a house and constructed a thermostat with a damper regulator to open and close the damper on his furnace. The usual "overshooting" was present. When he moved to Philadelphia in 1921, he was still experimenting by seeking to overcome this overshooting of heat. He discovered that if he applied additional heat, outside of the temperature of the room, to a bi-metal strip within the cover, this might avoid this "overshooting" which always arose from the time-lag or thermo-lag in a heating system of a home, due to the always present storage of such heat both in the source and means for the transfer of the heat between the source, or furnace, and to, and in, the room above. He got together a device, crudely constructed from emergency parts, and for the additional heat element, he used a small switchboard lamp, used in his telephone work.

He testified that on Thanksgiving Day, 1921, the first time that his brother, who was a mechanic, and he, had the day off together, they devoted that morning to reducing to practice his discovery. He was duly diligent in this regard. Eclipse Mach. Co. v. E. Krieger & Son, 2 Cir., 87 F.2d 755-757. He found that it worked quite well.

Some time in December, 1921, a neighbor, Mr. Reiley, who had been shown the somewhat crudely constructed thermostat, asked Shafer to construct another and continue to try it out in his house. This likewise worked satisfactorily and Reiley and Shafer then agreed together to see if they could develop this device and eventually make it commercial. This result did not happen, however, until some time in January, 1924, about a month before Shafer filed his application, then, for the first time. a thermostat, embodying Shafer's invention, was sold.

Thus, there is this period, already referred to, in regard to which it was Shafer's burden to show that he had not made a "public use" of his device within the definition of the statute.

Accordingly Shafer testified that he was experimenting and trying out his device both in his home and that of Reiley throughout the winter of 1921 and the fall and winter of 1922. There is sufficient evidence that this is true and that he made, during this time, a number of changes. He tried dry cells and alternating current relay. Tests were made of various types and values of resistance coils as a substitute for the original lamp.

It must also be remembered that this invention, which I will discuss more fully when we come to the question of infringement and validity, was an invention, or a new form of thermostat, for keeping the temperature of a living room at a certain heat desired when using the heat from a furnace or oil or gas supply in the basement of a house. It was a new system for heating a home acceptably. Thermostats were old, but the thermostat then known would not accomplish the result. There had been no need of such a thermostat where rooms were heated from a fire-place or from a stove in the room but, with the advent of new methods of heating of homes, there was a decided need for some such control, and it has proved a success.

On cross-examination Shafer testified: "You understand that you might make one thermostat and it might work, the proof of

operation of these thermostats depending on how many you can make, or several of them and they have to be tested over a period of time, over a period of years, in order to determine whether some difficulty will show up that did not show up in an experimental model or in one single model".

In view of the evidence, brief reference to which is thus made, could it be found that Shafer acted unreasonably in thus testing such an invention during a considerable period before attempting to market it at the risk of losing it by the prohibition of the Statute? I do not think so. On the contrary it seems clear to me that his was not a "public use" under the decisions.

The time that passed was substantially used in tests and experiments. Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249-256, 8 S.Ct. 122, 31 L.Ed. 141.

As has been said, "it may be tested and tried in a building, either with or without closed doors. In either case, such use is not a public use, within the meaning of the statute, so long as the inventor is engaged, in good faith, in testing its operation. He may see cause to alter it and improve it, or not. His experiments will reveal the fact whether any and what alterations may be necessary. If durability is one of the qualities to be attained, a long period, perhaps years, may be necessary to enable the inventor to discover whether his purpose is accomplished. And though, during all that period, he may not find that any changes are necessary, yet he may be justly said to be using his machine only by way of experiment." Elizabeth v. Pavement Co., 97 U.S. 126-134, 135, 24 L. Ed. 1000. See also National Phonograph Co. v. Lambert, 7 Cir., 142 F. 164, A. Schrader's Sons, Inc. v. Wein, etc., 2 Cir., 9 F.2d 306.

I come to the conclusion, therefore, that the Shafer invention was not in public use for more than two years prior to his application. Title 35 U.S.C. Section 31, 35 U.S.C.A. § 31.

This brings us to the final question of validity and infringement.

While it is somewhat interesting to note that both Brown and Honeywell argue that Phelan was first and that Shafer and Phelan infringe, yet, if Shafer was first, his patent is nevertheless invalid by reason of the prior art. If this is so then, as counsel for G. E. states, if Shafer and Phelan cover the same invention and Shafer is invalid because of the prior art, it would seem to follow that Phelan likewise is invalid. However, in view of the issue raised by the G. E. suit against Honeywell, and at the request of counsel for Honeywell, I shall consider the question of invalidity, and, if Shafer is found valid, any infringement by Honeywell.

Both in the re-issue patent to Phelan-Hotchkiss dated July 10, 1934, R.E. 19,235, and in the original patent (not in suit) dated July 10, 1928, No. 1,676,921, the inventors state that their invention "relates to electrical switches designed particularly for the regulation or control of electrical circuits * * * the subject matter of this invention has reference to a device making use of a liquid electrical contactor tube which comprises etc".

On the other hand, Shafer, in his patent, dated May 4, 1926, No. 1,583,496, states: "My invention relates to apparatus and systems involving heat or temperature-responsive means for affecting any suitable control, as of a signal or indicator, or any other apparatus or device, but more particularly for affecting control of a heating system, furnace or the like".

Counsel for Honeywell claims, I think properly, that the Phelan claims are not limited merely to the use of the switch. Phelan's patent discloses such a thermostatic electrical switch comprising a base, a conical spiral thermostatic bi-metalic element, mounted at one end on the base, and a mercury switch, supported on the free end of the bi-metal coil, and the mercury switch is either, of ring-type or straight cylindrical-type. I am satisfied, from the evidence, that no heat is produced by this ring or cylinder.

In my opinion this distinction is of some value for it seems to me that Shafer does not cover this mercury switch with the current passing through the bi-metal. To this extent Phelan may be valid and does not infringe Shafer. The contention of Honeywell that there is a difference between a "heat leveling device" such as Shafer and a "heat accelerating device" such as Phelan, is fanciful rather than substantial as disclosed by the patents before me.

Both the re-issue patent of Phelan, with the exception above stated, and the Shafer patent set forth substantially the same subject matter.

I see no reason to set forth all the claims relied on by the parties.

Phelan relies on Claims 31-32-33-35. Claim 33 is typical and is as follows: "A control device for maintaining the temperature of an ambient medium substantially uniform comprising in combination electric switching means, and a thermal device influenced primarily by the ambient temperature being operatively connected thereto for actuating the same, said thermal device moving said switching means to circuit closed position solely as a result of a fall in the ambient temperature to be controlled to restore said temperature to substantially normal value, the closing of said switching means, controlling an auxiliary supply of heat to said device whereby it actuates said switching means to open position as a result of the combined action of a rise in the ambient temperature to be controlled and the auxiliary heat".

Shafer relies on Claims 1-2-3-5-8-9-10-14-15-16-17-18-19-20. Claim 3 is typical and is as follows: "In a heating system, a primary source of heat comprising means for producing combustion, means for transferring the heat to a desired region, means controlling the combustion, an electric circuit controlling said combustion-controlling means, a thermostat in said region responsive to the transferred heat controlling said circuit, and a secondary source of heat comprising an electric heater influencing said thermostat and controlled by said thermostat".

▆▆▆ That Phelan infringes Shafer I think is sufficiently clear. Phelan may be more imperfect in function than Shafer but that does not prevent infringement. Mygatt v. Schaffer, 2 Cir., 218 F. 827; Gibbs v. Triumph Trap Co., 2 Cir., 26 F.2d 312.

The distinguished expert, Chester I. Hall, called by G. E., testified, among other things, in substance, that Shafer's problem was complicated and that all heating systems have time-lag at different parts of the systems. That it was with these time-lags in the system that Shafer had to deal. That Shafer had to find a thermo-sensitive device in the room which could control the heat source in spite of these time-lags, for the reason that after the room had dropped to a temperature at which additional heat was required the mere fact that a unit was turned on, did not indicate that this additional heat would be delivered immediately.

Then, after the room had arrived at a proper temperature, the thermostat attempting to prevent further increase would merely result in cutting off the source and would not result in an immediate decrease of heat delivery.

Thus Shafer discovered for the first time that he could produce within the thermostat, at the required time, a certain amount of electrical heat which would act upon the thermostatic blade directly so that this blade would be affected by both room temperature and electrical heat, then, by making this amount of electrical heat of the right value with relation to time-lags of the heating system, Shafer was able to regulate his thermostat and maintain the desired temperature in the room above by means of certain relays and other arrangements all shown in his patent drawings and claims.

This, Phelan was also, in some degree, attempting to do.

This brings us finally to whether Shafer is valid? Honeywell and Brown, as heretofore pointed out, now claim that the Shafer claims (and therefore Phelan) are old in the art and are therefore anticipated and invalid.

As to some of the Shafer claims (14 to 20) the argument by counsel for Honeywell is that they are confined to "means influencing" the thermostat. That therefore such claims are anticipated by prior patents if same show "any means." I think that a fair reading of these claims shows that Shafer refers to such "means" as "dependent upon additional heat".

Klingel, No. 1,403,963, disclosed entirely different means for dealing with the problem confronting Shafer. There is no movement of the bi-metal strip affected by added heat or by magnetic action. In Klingel we have "overshooting" which is the very thing Shafer prevents.

As to the other claims of Shafer in suit, I find nothing in the patents cited by Honeywell as anticipating Shafer. Kimball, No. 422,595 (1890), is entirely different and would be of no help, to one skilled in the art, in meeting the problem that Shafer had.

Daly and Dalton, No. 1,321,287, was not attempting to overcome time or thermolag. To be sure they used an electric heater but there was nothing that would help in overcoming "overshooting" caused by the storage of heat in the heating system

of a home. This patent was before the Patent Office when they granted Shafer's patent.

Baker, No. 1,328,477, and Bjornsen, No. 1,335,709, used heaters adjacent to the bi-metal strip but their problem was not concerned with the heating system of a home. The "overshooting" that, prior to Shafer, could not be overcome was still unsolved, nor, in my opinion, does the Hadaway patent No. 1,046,777 anticipate Shafer for he did not attempt to control the temperature of a flat-iron in normal operation, something that both Shafer and Phelan aimed at, in connection with the temperature of a room and thus prevent "overshooting". Hadaway disclosed an automatic arrangement for shutting off the heat when the iron got too hot for safety. Shafer's shut off the heat before the desired temperature had been reached, the very opposite of Hadaway. As to his disclosure in regard to opening and closing a damper there was no attempt to control the heat source from a remote point, such as from the rooms upstairs in a home, in order to overcome this time-lag present always in a house heating system.

To be sure thermostats were old. The bi-metal strip was old. Heaters adjacent to a bi-metal strip are present in the prior art, but nowhere do I find a combination for means to control in this way a heating system of a house, prior to Shafer.

Shafer was working on a temperature regulation something entirely foreign to Baker and Bjornsen. This same objection would apply to the steam chamber of Kimball No. 422,595, which was a clumsy and non-workable affair. Shafer controls a source of heat involving heat transfer means preventing "overshooting".

In other words, when the heat of the room of a house was to be kept at a certain degree by a thermostat it was found, up to the time of Shafer, that although the thermostat worked as intended and the heat from the furnace or oil burner from the basement was shut off, nevertheless, there was a surplus heat which had accumulated in the furnace and pipes that could not be shut off and as it continued to heat the room in spite of the action of the thermostat the room became hotter than was intended. This has been termed "overshooting".

Shafer therefore, hit upon his combination which was novel at the time, useful in its essence, and has been found commercially successful, disclosing for the first time means for preheating the bi-metal strip, by additional heat, functioning sufficiently in advance of a desired degree of heat, to accomplish the actual degree of heat in the room so desired.

■ While undoubtedly the present trend of decisions by the courts is not as liberal, as formerly, towards invention, nevertheless, it seems to me, that the following quotation from the decision of the Supreme Court is applicable to the situation disclosed here, by the evidence, in regard to Shafer:

"But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not, for years, occur in this light to even the most skilful persons. It may have been under their very eyes, they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * At this point we are constrained to say that we cannot yield our assent to the argument, that the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention". Webster Loom Co. v. Higgins, 105 U.S. 580–591, 26 L.Ed. 1177.

No doubt Shafer's idea was capable of being, and has been, greatly improved upon but, as we are dealing only with the patents of Shafer and Phelan, I feel satisfied that Shafer's patent, within the limits disclosed, is a valid one.

The General Electric Company is therefore entitled to a decree with costs and disbursements. Submit findings.